WILLIAM A. CLARK, Appellant, v. CAJETAIN DUCHENEAU and JOHN J. CORTEZ, Respondents.

### No. 1421.   (72 Pac. 331.)

1. **Bills and Notes:   Collateral Agreement:   Payment: Evidence:   Contradiction of Written Instrument.**
   Where, in an action on a note, defendant admitted its execution, parol evidence that it was not given for a loan, as plaintiff contended, but to secure performance of defendant's verbal agreement to purchase certain mining stock for plaintiff, and was to be surrendered on delivery of such stock, and that defendant had fully performed such agreement, was not objectionable as tending to vary or contradict the terms of the note.

2. **Verdict on Conflicting Evidence Not Disturbed on Appeal.**
   A verdict based on conflicting evidence will not be reversed on appeal, though the court may entertain a different view than that of the jury as to the preponderance of the evidence.

(Decided April 29, 1903.)

Appeal from the Second District Court, Weber County. —*Hon. H. H. Rolapp,* Judge.

Action on a promissory note.   From a judgment in favor of the defendant Cortez, the plaintiff appealed.

AFFIRMED.

*Thomas Maloney, Esq.,* for appellant.

*John E. Bagley, Esq.,* for respondent Cortez.

26 Utah 7

STATEMENT OF FACTS.

This is an action on a promissory note which was executed by the defendants to the plaintiff. The complaint is in the ordinary form of one on a note, and demands judgment for $2,500 principal, and for interest and attorney's fee. The defendant Ducheneau filed no answer. Defendant Cortez filed a separate answer, and, admitting the execution of the note, averred that it was executed and delivered to plaintiff upon an agreement that it should be held as a pledge of assurance and security for the performance of a certain contract; that such contract has been fully performed, and the note thereby settled and satisfied; that on and previous to the date of the execution of the note this defendant was an officer of the Black Butte Mining Company, a corporation owning a coal mine, and engaged in the business of mining and selling coal, the capital stock of which corporation consisted of 1,000 shares of the par value of $100 per share, of which this defendant owned 565 shares; that on or about July 11, 1898, the date of the note, the contract above mentioned was made, the plaintiff agreeing with both of the defendants to purchase 500 shares of the stock, provided that all of the indebtedness of the company would be paid and canceled, and that he would furnish $2,500 to cancel the indebtedness and pay for the stock; that, in consideration of this agreement on the part of the plaintiff, the defendants agreed to pay, or cause to be paid, all the indebtedness of the company, amounting to $1,236.95, and to cause to be sold and transferred to him, or his agent, the defendant Ducheneau, the 500 shares of stock; that it was further agreed that the plaintiff would pay the $2,500 in advance to enable the defendants, who were without money, to pay the indebtedness and purchase the 500 shares of stock for him, and that, to secure the money so to be advanced, the defendant Ducheneau was to execute the note sued on, and this defendant was to sign the same as surety; that thereafter, on July 11,

1898, in pursuance of such agreement, the note was so executed and signed, with the further agreement that it would be cancelled, and this defendant released from all obligations thereon, upon the performance of the contract, and thereupon the same was delivered as a pledge, as aforesaid; that then the money was paid over to defendant Ducheneau, as the agent of the plaintiff to carry out the contract; that the indebtedness was then discharged, and thereafter the 500 shares of stock purchased, transferred and delivered to the plaintiff; that thereby the contract was fully performed and the note paid; and that this defendant is entitled to be released from further obligations on the note.

As to the existence of the alleged verbal contract the evidence is conflicting. That of the plaintiff is to the effect that the $2,500 advanced constituted a loan, evidenced by the note, and that the 500 shares of stock were received by the payee and held as security for the loan.

Respecting the alleged agreement and the purchase of the stock, the plaintiff in his deposition stated: "I did not on or about July 11, 1898, or at any other time, either bargain for or purchase an interest in the Black Butte Coal Mining Company. I never bought any shares of the stock of the company mentioned, nor made any contract for their purchase. I held 498 shares of the stock. I hold said stock as security for the payment of the note herein sued upon and all advances made to the company." He further stated that he would surrender the stock upon payment of the note sued upon and all advances made.

The testimony of the defense as to this stock transaction is to the effect that there was such an oral contract; that the 500 shares of stock constituted a purchase; that the note was delivered and held as collateral, to be cancelled, as paid and satisfied, upon the performance of the agreement; and that the agreement was fully performed.

The witness Cortez in his own behalf, among other

things, testified: ''I went to Butte, Montana, to nego-
tiate with Mr. Clark in regard to him purchasing or
securing for him 500 shares of the Black Butte Coal
Mining Company. I says to him: 'Mr. Clark, I don't
want to sell no mine; only to send an expert up there
-and have it examined.' 'No,' he said, 'that's not nec-
essary. I think you are an honest looking man. I have
seen you before, I believe'—and then asked me how
much money it would take to purchase a half interest;
he would have nothing but a half interest—nothing
less. I told him. 'Well,' he says (the substance is),
'Mr. Ducheneau is a friend of mine, but I don't like to
have the money sent to Ogden, not knowing absolutely
that the money would be used for the purchase of that
stock and paying the debts on the mine. Then, of course,
I will hold you responsible, and see that the money is
used for no other purpose than to secure a half interest
of that stock.' I said: 'Now, Mr. Clark, I don't like
to be obligated on a note to pay for that stock. I want
it understood that when I secure half of that stock, and
deliver it to Ducheneau, my obligation on the note will
cease.' Mr. Clark says: 'Certainly; that's the way I
understand it.' '' The witness further stated: ''Finally
I got 500 shares of this company's stock, and delivered
it to Ducheneau, who delivered it to Mr. W. A. Clark.
This about the 5th or 6th of November, 1898, at Butte,
Montana, in Thompson's office. Thompson, Ducheneau,
Clark and I were present. Mr. Clark said: 'I don't
want it this way. I want the stock transferred in my
name, 499 shares, and one share to my cashier's name,
N. J. Johnson, because he will attend to the business
for me.' He ordered Thompson to transfer and make
the stock in his (Clark's) name and one share to John-
son.'' He also testified that he had the same under-
standing with Ducheneau when the note was signed, and
in a letter dated December 7, 1898, which the witness
wrote to the plaintiff, he in part said: ''The under-
standing between Mr. Ducheneau and I was that my
part of the indebtedness should be cancelled, provid-

ing I could secure the half of the stock, and it was further understood that my obligation would cease on .the note as soon as I have delivered the 500 shares.   I have fulfilled my part of the bargain to a letter, and saved over $500 to Mr. Ducheneau besides, and therefore I consider that I ought not be held any more. as the stock is in the possession of Mr. Ducheneau and yourselves, and surely you will not want me to pay for it, after getting it—the mine—in full operation.''

The facts admitted, and evidence not appearing to be disputed, show that the note was executed July 11, 1898, by the defendants, and delivered to the plaintiff; that at the time of its execution and delivery the Black Butte Mining Company was in existence, with a capital stock of 1,000 shares of the par value of $100 per share, of which stock the defendant Cortez owned and held 565 shares; that then the defendant Ducheneau had no interest in the company; that, upon the execution and delivery of the note the plaintiff paid the $2,500 to defendant Ducheneau; that all the defendant Cortez received of that money was $25, for expenses incurred in carrying out the transaction, and $113.75, payment for 65 shares of his stock; that with the $2,500 the entire indebtedness of the company, amounting to about $1,250, besides expenses, was paid, and the 500 shares of stock purchased, and thereafter, about the 5th or 6th of November, 1898, delivered to plaintiff, by the defendant Ducheneau; that, upon the stock having been delivered to the plaintiff, the plaintiff ordered one share thereof to be transferred to N. J. Johnson, his secretary, and held the balance of it; that on December 5, 1898, the company was reorganized under an agreement by which the plaintiff, the defendant, and William Thompson became the incorporators and stockholders; that the plaintiff afterwards advanced money to the company for the purpose of developing the mine, placing machinery therein, and for purchasing coal land, in the sum of $20,097.65; that under the reorganization each incorporator was to have a one-fourth interest in the concern;

that shortly thereafter defendant Cortez sold the re-mainder of his stock to William Thompson; that the plaintiff had the mine examined by an expert; and that defendant Ducheneau purchased the 500 shares of stock delivered to the plaintiff, and paid for them out of the $2,500 after the note was signed.

At the trial, the jury returned a verdict against the plaintiff, "No cause of action," and the court entered judgment accordingly. This appeal is from the judgment.

BARTCH, J., having stated the case as above, delivered the opinion of the court.

The main question presented in this case is whether it was competent for the defendant to introduce evidence in support of the verbal contract, set up in his answer, showing a conditional delivery and satisfaction of the note, its execution being admitted.

The appellant insists that the testimony respecting the parol agreement alleged to have been made previous to and at the time of the execution and delivery of the note was erroneously admitted, because, as is urged, all such agreements and understandings were merged in the written contract, whose terms could not be varied or contradicted by parol evidence. The answer to this contention is that the evidence in question was not introduced to vary or contradict the terms of the note or written instrument. Its execution was admitted. There was no attempt to change the language used in the writing. Its terms were not disputed, but it was claimed they were fully satisfied, and the obligation created thereby discharged, not by payment of the money, but by the the complete performance of a contract entered into by the payee and makers. The payee claimed that the note was given and accepted for money loaned, and that the stock was received and held as security for the loan. The defendant Cortez, one of the makers, claimed that the money for which the note was given was furnished under or in pursuance of a verbal contract to

purchase a certain amount of stock in the mine for the payee; that the note was executed and delivered as security for the performance of that agreement, to be surrendered upon the purchase, and delivery to the payee, of the stock; and that the stock had been purchased and delivered, the agreement fully performed, and the note thereby satisfied. Such was the issue, and this included the object of the execution of the note. Under such an issue it was competent to offer and admit evidence to show what the purpose of the parties was in executing, delivering, and receiving the note; that the execution, delivery, and acceptance of the instrument were conditional, and made so by a separate oral agreement; and that the terms of such agreement had been fully performed, and the obligation appearing upon the face of the note satisfied and discharged.

Proof of such an agreement, and satisfaction thereunder, does not vary or contradict the language of the instrument, but simply shows that the obligations patent upon its face no longer exist in fact. Undoubtedly, the evidence in dispute was admissible for such purpose, so long as the controversy was between the original parties to the transaction. If the note had gone into the hands of a third party, for value, ignorant of any conditional delivery, or of such separate agreement, the admissibility of such evidence would have presented a different question.

The Supreme Court of California, in Howard v. Stratton, 64 Cal. 487, 2 Pac. 263, which was an action upon a promissory note, held that parol evidence was admissible to show that it was given to secure the performance of an agreement whereby the payee conveyed certain lands to the maker in consideration that the latter should support him during the residue of his life, and that the defendant had performed the conditions of the agreement.

Mr. Jones, in his work on Evidence (volume 2, sec. 507), says: ''As between the original parties, the conditional delivery of a note may be shown, as that it was

delivered in escrow. So it may be shown, as between the original parties, that the note had been discharged by the performance of an oral agreement, or that the delivery was conditional upon a certain event.''

In McFarland v. Sikes, 54 Conn. 250, 7 Atl. 408, 1 Am. St. Rep. 111, it was held that proof that, at the time a note was executed and put into the hands of the payee, an agreement was made that it should be returned to the maker upon a certain day, if he should then demand it, did not contradict or attempt to vary the terms of the note, and that the agreement might be proven by parol evidence.

So, in Benton v. Martin, 52 N. Y. 570, it was said: ''Instruments not under seal may be delivered to the one to whom upon their face they are made payable, or who by their terms is entitled to some interest or benefit under them, upon conditions the observance of which is essential to their validity. And the annexing of such conditions to the delivery is not an oral contradiction of the written obligation, though negotiable, as between the parties to it, or others having notice. It needs a delivery to make the obligation operative at all, and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions with which delivery is made.''

In Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775, Mr. Justice Field, speaking for the court, said: ''The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. It cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument.'' Buchanon v. Adams, 49 N. J. Law, 636, 10 Atl. 662, 60 Am. Rep. 666; Wendlinger v. Smith, 75 Va. 309, 40 Am. Rep. 727; Crosman v. Fuller, 17 Pick. 171; Schindler v. Muhlheiser, 45 Conn. 153; Couch v. Meeker, 2 Conn. 302, 7 Am. Dec. 274; Davis v. Davis, 97 Mich. 419, 56 N.

W. 774; Moore v. Cross, 19 N. Y. 227, 75 Am. Dec. 326.

From a review of the authorities, it thus clearly appears that the testimony in question was admissible for the purpose for which it was offered.

An examination of that evidence, however, shows a substantial conflict respecting the existence of the alleged oral agreement, the conditional delivery of the note, and its satisfaction and discharge of the obligation, as per the terms of that agreement. Such being the case, and the evidence having been submitted to the jury, and the jury having passed upon it, we cannot disturb the verdict. It is no longer an open question in this jurisdiction that this court will not disturb a verdict based upon conflicting evidence, even though we may entertain a different view from that of the jury as to the preponderance of the proof. Nor, for like reasons, can we interfere with the finding of the jury on the question whether or not the defendant Ducheneau, in the transaction in controversy, acted as agent for the plaintiff.

We find no reversible error in the record. The judgment is affirmed, with costs.

BASKIN, C. J., and McCARTY, J., concur.