## SMITH v. CANNADY.

No. 2609.   Decided March 15, 1915 (147 Pac. 210).

1.  EVIDENCE—PAROL EVIDENCE TO VARY WRITTEN INSTRUMENT—AD-
    MISSIBILITY.  Where a written assignment of a lease expressly
    provided that the original lessee should remain liable for the
    rent, parol evidence that at the time the assignment was made
    it was agreed the original lessee should no longer be liable is
    inadmissible.  (Page 526.)

2.  TRIAL—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.  The charge
    should not submit an issue not raised by the evidence.   (Page
    528.)

3.  TRIAL—ABSTRACT INSTRUCTIONS.  In a suit on a lease, instruc-
    tions which abstractly defined surrender by operation of law
    and by reason of abandonment and acceptance, leaving to the
    jury the question of whether the facts showed an acceptance,
    are incorrect, being abstract and not submitting the law applic-
    able to the particular facts of the case.  (Page 528.)

Appeal from District Court, Second District; *Hon. J. A.
Howell,* Judge.

Action by George A. Smith against Rebecca Cannady.

Judgment for defendant.   Plaintiff appeals.

REVERSED AND REMANDED.

*Richards & Willis* for appellant.

*Boyd, De Vine & Eccles* for respondent.

STRAUP, C. J.

The plaintiff by written lease leased to the defendant, un-
der the name Helen Hartman, three floors of a rooming or
an apartment house in Denver, Colo., from April, 1910, to
the 31st of August, 1913, at a monthly rental of $225 pay-
able in advance.   The lease is admitted.  The plaintiff sues
for unpaid rentals from and including August, 1912, to and
including May, 1913, and for a balance of unpaid rentals
of $75 per month from thence to the end of the lease, a total

of $2,625. The lease was unassignable without the written consent of the plaintiff. In the complaint it is alleged that on the 22d of January, 1912, the lease, with the written consent of the plaintiff, was assigned by the defendant to one Belle Aldridge. The assignment, as indorsed on the back of the lease and as pleaded, is:

"Assignment and Acceptance.

"For value received I hereby assign all my right, title and interest in and to the within lease unto Belle Aldridge, assignee, her heirs and assigns, and in consideration of the consent to this assignment by the party of the first part in said lease mentioned, guarantee the performance by said assignee of all the covenants of the party of the second part in said lease contained and, in consideration of this assignment, and of said consent said assignee hereby assumes and agrees to make all the payments and perform all the covenants of the within lease by the said party of the second part to be made and performed.

"Witness my hand and seal this 22d day of January, A. D. 1912.

"Helen Hartman. [Seal.]
"Belle Aldridge. [Seal.]"

The written consent as also indorsed and pleaded, is:

"Consent to Assignment.

"I hereby consent to the assignment of the within lease to Belle Aldridge on the express condition, however, that the assignor shall remain liable for the prompt payment of the rent and performance of the covenants on the part of the second party as therein mentioned, and that no further assignment of said lease or subletting of the premises or any part thereof shall be made without my written assent first had thereto.

"Witness my hand and seal this 22d day of January, A. D. 1912.

"George A. Smith [Seal.]
"By J. E. Robinson."

These are admitted in the answer thus:

"Answering paragraph 2 of said complaint, defendant admits the allegations as therein set forth, and in this regard

alleges that the assignments in said paragraph set forth were induced by statements of the plaintiff, through his authorized agent, that the same would in no way affect the agreement, by which defendant was understood to be released from the provisions of such lease.''

In the answer it is further alleged that the lease on the 22d of January, 1912, was terminated and ended, and that:

''It was then understood and agreed by and between the parties hereto that the defendant herein should no longer be responsible for or liable for the payment of the rent, and that plaintiff should look to, and plaintiff did thereafter look wholly to, the said Belle Aldridge, therein mentioned.''

It further is alleged that thereafter, and on the 8th of July, 1912, Aldridge, without the knowledge or consent of the defendant, but with the knowledge and consent of plaintiff, assigned to one Timmons, and that Timmons, on the 29th of July, assigned to M. E. and Myrtle Hatfield, and that ''the plaintiff made certain changes as to the rental to be paid,'' and that he, in August, 1912, ''re-entered and repossessed the premises and ever since had possession, custody, and control thereof, as in his former estate, and thereby did wholly terminate and end said lease.''

The plaintiff resided in Washington. The business in his behalf was done by a local agent at Denver, who also was a lawyer. In October, 1911, the defendant left Denver and went to Canada. She then sold the furniture in the house to one Flohr and took a mortgage for the unpaid purchase price. Before she left she took him to plaintiff's agent, and, according to defendant's evidence, requested that he be substituted in her place as a tenant, but that the agent refused to accept him; according to the plaintiff's evidence even no such request was made. The defendant, however, left Flohr in charge of the business. He failed to pay the December, 1912, rent. Plaintiff's agent wrote defendant about it, who then was in Seattle and who returned to Denver in January. She found Flohr had abandoned the premises. She paid the rent due and employed plaintiff's agent to reclaim the furniture by foreclosure. In January she sold the furniture and business to Aldridge. She took Aldridge to plaintiff's agent

who drew up the papers. The written assignment was then
made, and the written consent then given. Aldridge took pos-
session. The defendant again left for the Northwest. On
the 8th of July, 1912, Aldridge sold to Timmons, who there-
upon took possession. On the 29th Timmons sold to the Hat-
fields, and they took possession. A similar written assign-
ment of the lease was made by Aldridge to Timmons and by
Timmons to the Hatfields, as was made by the defendant to
Aldridge; but no consent in writing was given by the plain-
tiff, or his agent. Plaintiff's agent, however, knew all about
the assignments, for in each instance the parties went to his
office, and had him draw the assignments, and there saw them
signed. If not expressly, he certainly implied consent to the
making of them. On the 9th day of July he wrote defendant
notifying her of the assignment by Aldridge to Timmons and
asked to be advised "whether or not this is satisfactory to
you." The defendant admittedly received the letter, but made
no reply. On the 7th of August, 1912, he again wrote her, noti-
fying her of the assignment by Timmons to the Hatfields, of
a controversy between them, their refusal and failure to pay
the August rent, his fear that as a result "of their fight" the
premises probably would be left vacant, the departure of Al-
dridge for parts unknown, and stated that "as you are liable
for the rent until the expiration of the lease, as I advised you
before you left here, I think it is well for you to be prepared
to protect yourself," and advised her to return. The defend-
ant admittedly received that letter, but made no reply. On
the 16th of August plaintiff's agent again wrote her, inform-
ing her that the August rent had not been paid; that the
occupants had left the premises; that the furniture had been
or was about to be removed by the mortgagee, and again ad-
vised her to return and make "some disposition of the mat-
ter." This letter also was received and unanswered by her.
Plaintiff's agent attempted to collect the rent from Timmons
and the Hatfields, but failed. When the furniture was re-
moved the key of the premises was left by the mortgagee with
plaintiff's agent. He caused the rooms to be cleaned and put
up a "For rent" sign. As testified to by him, the rental
value of the premises depreciated. He offered them for rent

at $175 per month for the first year, $200 for the second, and $225 for the third, but was unable to rent them. They stood vacant for ten months, or until May 13th, when he rented them for $150 per month, that being, as he testified, the best rental he was able to obtain for them. During the time Aldridge had possession of the premises, the rent was reduced one month to $175, the other months to $200. Evidence also was adduced to show that plaintiff's agent rented the premises to Timmons, who refused to pay more, at $175 per month for the first year, $200 for the second, and $225 for the third year.

Over plaintiff's objections the defendant was permitted to testify that plaintiff's agent—

"told me when I got a reliable tenant I should be released, and after a few days Mrs. Aldridge came along, and I told Mr. Robinson (plaintiff's agent) that she was a reliable tenant, and after I found out that she had property in Colorado as well as Denver, and I took her up to the office and the deal was made."

She further testified she was at his office with Mrs. Aldridge more than once before the assignment was made. Then she was asked by her counsel:

"Q. On the 22d of January, 1912, what took place in his office, and what was said by Mr. Robinson in your presence to you, and between Mr. Robinson and Mrs. Aldridge? A. I went up to his office, Mrs. Aldridge and I, and we talked over the closing of the deal. She talked with Mr. Robinson with reference to accepting her as a tenant, and he asked, as he had asked before, how reliable she was; at that time he asked her, she told him what property she had, and he said she would be perfectly suitable. Q. Did they discuss at that time the question of the rental of the property? A. She said she thought $225 a month was altogether too much, and he offered to let her go in there for $200. Q. What was done then? A. The deal was closed up, and the papers all prepared. * * * Mr. Robinson asked me for the lease, and I gave it to him, and he filled it out and brought it to us and said it was ready for us to sign. Q. Did he say anything to you—what did he say at that time about the signing of it;

did he read it to you, or ask you to read it? A. He said she was perfectly satisfactory to him and gave us the paper to sign. Q. What took place after that, anything further? A. Well, he said he would not look to me for the rent, and hoped that I would be prosperous and bade me goodby and I went on my way."

On cross-examination she testified that all these conversations were before the assignment was made by her to Aldridge, and that the last was "shortly before the assignment was written." A motion also was made to strike the testimony. That, too, was refused. The plaintiff also made a motion to direct a verdict in his favor for the full amount sued for. That also was refused. The cause was submitted to the jury, who rendered a verdict for the defendant, no cause of action. Plaintiff appeals.

Complaint is made principally of the rulings admitting and refusing to strike the testimony referred to, and of the charge. The objections made to the testimony and here urged are that the defendant was permitted by parol to vary and contradict the terms of the written assignment from the defendant to Aldridge, and the written terms on which the plaintiff consented to the assignment. It is elementary that the terms of a written agreement may not be varied or contradicted by prior or contemporaneous parol agreements or stipulations. The defendant, in her brief, does not dispute but admits such to be the rule. But in that connection she makes this statement:

"However we deem it unnecessary to cite authorities to the principle that any ordinary written agreement cannot only be varied in effect, but wholly dispensed with, or abrogated as between the makers, by their express oral agreement or by acts of the parties inconsistent with it."

Just what, in view of the admission, is meant by this language is not clear. The ordinary meaning of it is to deny the rule itself. What, perhaps, is meant by it is that the parol evidence rule has no application to stipulations or agreements made between the parties subsequent to the execution of the written instrument, nor to collateral or independent, though contemporaneous and oral, agreements, nor to incom-

plete written agreements. But the oral agreements or stipulations testified to were not subsequent to the execution of the written assignment and acceptance. They, confessedly, all were prior thereto or contemporaneous therewith. The ruling, therefore, cannot be upheld on that ground. Now, were the oral agreements or stipulations testified to collateral to the written assignment and acceptance, or were they independent agreements or stipulations? We think not. The matters testified to as resting in parol are embodied in the written assignment and acceptance. The one contradicts the other. Under the provisions of the lease to make a good assignment required plaintiff's written consent. It was given. Here in such respect is what the defendant expressed and signed: "For value received I hereby assign," etc., to Aldridge, etc., "and in consideration of the consent to this assignment by the party of the first part [the plaintiff] in said lease mentioned, guarantee the performance by said assignee of all the covenants of the party of the second part [the defendant] in said lease contained"; the plaintiff, "I hereby consent to the assignment of the within lease to Belle Aldridge on the express condition, however, that the assignor [the defendant] shall remain liable for the prompt payment of the rent and performance of the covenants on the part of the second party (the defendant) as therein mentioned." Thus, whether the defendant upon the assignment was or was not to be released from future rent payments, or from other covenants or obligations assumed by her under the lease, was a subject concerning which the parties expressed their intention in writing. The things testified to as resting in parol were not collateral to nor independent of that, but were concerning the identical matters stipulated in and expressed by the writing. Nor can it be said that the written assignment and acceptance so indorsed on the back of the lease was an incomplete contract. They, together with the lease, to which direct reference was made, expressed all the essentials of a good and complete agreement. The assignment itself is not assailed on the ground of fraud, deceit, or mistake. It is averred that it "was induced by statements of the plaintiff, through his agent, that the same would not in any way affect the agree-

ment by which defendant was understood to be released from the provisions of the lease.'' But that is but another way of asserting that the written terms of the assignment voluntarily entered into by the defendant were not to be binding because of prior or contemporaneous parol agreements inconsistent therewith. There are neither allegations nor proof of fraud, deceit, or misrepresentation which affect the execution or legal existence or binding force of the assignment. The defendant was allowed to but substitute oral testimony that she was to be released for the written evidence of the agreement that she was not to be released. Under the issues the testimony. was improperly received. That the ruling was prejudicial and works a reversal is manifest.

With that testimony in, though erroneously admitted, the plaintiff was not entitled to a directed verdict. Whether he would have been entitled to it had that testimony been excluded is not the case before us. Nor is the ruling refusing his motion for a direction pressed. We, therefore, express no further opinion as to that.

Much complaint is made of the charge. The court, in effect, told the jury that if they found that the plaintiff and defendant, "subsequent to the assignment" by the defendant to Aldridge, entered into a verbal agreement by the terms of which Aldridge was substituted for the defendant and "the defendant released from liability and responsibility for the payment of rent under said lease," and that thereupon the premises were surrendered by the plaintiff to Aldridge, then the plaintiff could not recover. There was no evidence of any such "subsequent verbal agreement." This charge was therefore wrong.

The court further charged that if the jury did not find as just indicated, "then the next question for you to determine is whether or not there was at any time a surrender of the premises in question by operation of law, and the court charges you that if you find there was such a surrender by operation of law at any time during the period covered by the lease in question herein, then the plaintiff is entitled to recover for the rent up to the time of such surrender, but not thereafter." In other portions of the charge

the jury also were told that if they found "the premises
were surrendered by operation of law" the plaintiff could not
recover.   Then the court charged:

"That to constitute a surrender by operation of law there
must not only be an abandonment of the premises by the
tenant, but also an acceptance thereof by the landlord as a
surrender.   To constitute an abandonment there must be such
relinquishment as justifies the immediate resumption of the
possession by the landlord.   To constitute an acceptance an
express agreement to accept the premises need not be shown,
but the landlord's consent may be implied from the circum-
stances and from the acts of the parties.   There must, how-
ever, be some unequivocal act on the part of the landlord
which unmistakably evinces an intention on his part to termi-
nate the lease and the relation of landlord and tenant."

The undoubted duty is cast upon the court to decide all ques-
tions of law and to instruct the jury as to the law applicable
to the evidence of the particular case.   That duty is not dis-
charged by giving the jury, as was done here, mere lexical
and cyclopedic definitions, and mere abstract propositions
of law.   Such language as was here used may well be em-
ployed in stating legal propositions or principles in a text
or in an encyclopedia, but it is not appropriate nor helpful
as a charge.   A text-writer may well say that premises may
be surrendered by operation of law or by abandonment and
parties released from a lease, and may instance how that may
be done, or what constitutes such a surrender or release.   But
litigants are entitled to have the court declare the law applic-
able to the particular facts of the case.   That was not done.
The court but gave the jury definitions and then cast on them
the duty of ascertaining what facts in evidence did or did not
constitute an abandonment or surrender by operation of law,
and thus the jury were required to find not only the facts,
but also to determine the legal effect of them.   Except as to
mixed questions of law and fact, the court should itself direct
the jury as to the legal effect of particular facts found; here,
if certain enumerated facts were found, that they did or did
not constitute a surrender or release.   A charge thus applying

Vol. 45—34

the law to the particular facts, stating to the jury the crucial question or questions of fact they upon the evidence were required to answer, and directing them as to the legal effect of the finding, is more helpful to them and conducive far more to the just administration of the law than giving the jury mere definitions or abstract propositions which the jury are, as here they were, allowed to apply as they thought proper. It cannot be told what fact or facts were regarded by the jury as constituting a surrender or release by operation of law or abandonment. They were at liberty to so regard anything they in their judgment saw fit. And so, in another portion of the charge the jury were told that a tenant cannot release himself from "liability for rent unless there is a valid and binding agreement between the landlord and the tenant to release the tenant from further liability for rent," again leaving the jury to determine what fact or facts or stipulations in evidence would or would not be a valid and binding agreement. They may have concluded that the written terms of the assignment and acceptance by which the defendant was to remain liable for future rent did not constitute a valid and binding agreement and hence found for the defendant. Under the charge they were at liberty to do that, or to exercise their own judgment as to what would or would not be a binding agreement.

We think these charges wrong, and for that reason also must the judgment be reversed.

Let the order so be entered and the case remanded, with directions to grant a new trial. Costs to appellant.

FRICK and McCARTY, JJ., concur.