STATE BANK OF BEAVER COUNTY v.
HOLLINGSHEAD.

No. 5018. Decided October 6, 1933. (25 P. [2d] 612.)

*Leslie Frazer*, of Salt Lake City, and *Abe Murdock*, of Beaver, for appellant.

*Wm. F. Knox*, of Palo Alto, Cal., and *Samuel A. King*, of Salt Lake City, for respondent.

MOFFAT, Justice.

This action is based upon a promissory note. Defendant is an indorser. The plaintiff sues for an unpaid balance of $2,750.97, with accrued interest. The face of the note was $5,000. The execution and delivery of the note are admitted. As stated by respondent, "there was only one issue before the court, and that was whether the note in question had been fully paid."

In order to understand the position of the respective parties it is necessary to state briefly not only the material matters admitted and proved, but also some offered to be proved. This statement also reflects the theories of the respective parties to the litigation.

In September, 1923, William Roberts, Oren Burke, and Ralph Myers applied to the plaintiff bank at Beaver City, Utah, for a loan of $5,000. The bank agreed to make the loan provided the note be secured by adequate indorsements. On September 11, 1923, the date the note bears, the cashier of the bank prepared the note, and the makers, Roberts, Burke, and Myers, signed it at the bank in Beaver City. The note was then taken by the makers to the neighboring town of Minersville, where the makers resided, for the purpose of procuring the necessary indorsements. The note was there indorsed by the defendant and five other individuals. Shortly thereafter the makers delivered the note to the bank, and on September 17, 1923, the bank issued to the makers a time certificate of deposit payable to the order of Roberts, Burke, and Myers, drawing 4 per cent interest, and maturing six months after date.

The makers of the note had been the successful bidders for, and were later awarded, a contract for the construction of a 7½ mile section or road in Zion National Park. One of the conditions of the contract required them to file a surety bond for the faithful performance of the contract. The surety company, before it would execute the bond, required collateral security. To secure this bond Roberts,

Burke, and Myers, to whom the certificate of deposit was issued, indorsed it to the surety company as collateral security, and at maturity it was paid by the bank. The bond was written and work commenced upon the contract. About the time of beginning work Mr. Roberts died, and the remaining parties, Burke and Myers, soon found themselves in such financial difficulty that it was impossible for them to continue the contract work. Loss appeared inevitable. Burke and Myers, the remaining partners, the indorsers of the note, and a number of other individuals who had become involved upon the paper of the partnership, took an assignment of the contract and entered into an agreement with the partnership and among themselves whereby they took over the partnership assets, and assumed the liabilities. By the agreement John R. Murdock was appointed to take full charge of all work, hire employees, keep 'accounts, and generally to manage the affairs and property, receive and pay out money, make and indorse checks and vouchers incident to the work as it progressed.

A little later Oren Burke, Ralph Myers, and Lillie Roberts, as administratrix of the estate of William Roberts, deceased, executed separate powers of attorney appointing John R. Murdock as their attorney in fact "to endorse, sign, and deliver any and all checks, vouchers, or other papers necessary to sign for any and all payments to the said second parties (the partnership) for any work, labor, or other purposes connected or in any way appertaining to said contract." These powers of attorney were by their terms irrevocable. Copies of the agreement and powers of attorney were delivered to the bank.

Exclusive of the $5,000 note, the subject-matter of this suit, large sums of money were advanced by the bank for the purpose of financing the work of completing the road under the contract. An account was carried at the bank into which moneys received from loans or in payment for work under the contract were deposited and checked out by

Mr. John R. Murdock under the power vested in him under the agreement and powers of attorney.

After the road job had been completed the surety company sent to Abe Murdock, its local representative, a draft or check payable to Roberts, Burke, and Myers, with instructions to deliver the check upon surrender of the receipt issued by the surety company for the certificate of deposit at the time of bonding Roberts, Burke, and Myers on the road contract. This check was delivered to John R. Murdock, who had the receipt and charge of the work of Roberts, Burke, and Myers, and he deposited the check in the State Bank of Beaver to the credit of the account of Roberts, Burke, and Myers, as shown by the ledger sheet of the bank. Some time after, there was credited upon the $5,000 note sued upon herein the sum of $2,249.02, reducing the principal balance to the sum of $2,750.98, the amount sued for in the action.

Had the whole picture or set-up of the parties and what actually took place in relation to the road contract, and what was done in order to complete the work required under the contract, and the disposition of the certificate of deposit, been permitted to be heard the story would have been very different from that which the jury actually heard. The crux around which the testimony presented and received, and offered but not received, is this $5,000 note and the return of the proceeds thereof by the surety company, and the application made thereof.

The complaint states a cause of action upon a promissory note against an indorser in the usual form. The answer admits execution, delivery, and valuable consideration, then makes denial of any amount being due, and pleads as an affirmative defense what was finally admitted to be a claim of payment. Another plea of release of other indorsers is contained in the answer, but is not relied upon. It is upon what is denominated in the pleadings as paragraph 1 of the affirmative defense that the testimony and battle of issues revolve. That particular paragraph reads:

"That prior to the execution of said note, the makers thereof, William Roberts, Oren Burke and Ralph Myers, procured a contract from the United States of America for the construction of approximately seven and one-half miles of road in what is known as Zion's National Park, Washington County, Utah, and were required to give a bond for the faithful performance of said contract, and that it became and was necessary for the makers of said note to deposit with a surety company furnishing said bond, certain security by way of cash or certificate of deposit, or cashier's check, and in the sum of $5,000.00, and for the purpose of arranging for the giving of said cash security as above stated, the said makers negotiated a loan with the plaintiff herein, and induced this defendant and five other individuals to become endorsers upon said note, it being expressly understood and agreed between the makers and said endorsers and the plaintiff herein that said money should only be deposited and held as security for said bond, and that upon the fulfillment of the terms and conditions of said bond, said money should be returned to the plaintiff herein, and defendant alleges that said money was thereafter returned to the said plaintiff herein and was accepted by said bank, and fully paid and discharged the principal sum due upon said note; that the plaintiff herein only accepted the note as set forth in plaintiff's complaint, and advanced the money thereon for the specific purpose of having said money used as security for the bond hereinbefore referred to, and with the understanding that upon the release of said bond the money would be returned to the bank and be accepted by it as full payment of the principal of said note, and defendant alleges that all interest due upon said note was paid to and received by said plaintiff, and that there is not now due or owing, on said note any sum or amount whatsoever."

Appellant specifies eighty-nine assignments of error; but groups them under five divisions: (1) Improper dismissal of qualified jurors; (2) errors respecting the reception and exclusion of evidence; (3) insufficiency of the evidence; (4) errors in the charge to the jury; and (5) denial of plaintiff's motion for a new trial, and that the judgment is against law.

The record disclosed that when the cause was called for trial and after both sides had announced themselves as ready to proceed the following occurred as shown by the record:

"Thereupon, the clerk drew the names of eight persons for service as jurors. Jurors examined by the court. From such examination it appeared all persons thus called were depositors of the bank.

"The Court: They may be excused.

"Mr. Murdock: We object to them being excused.

"The Court: The jury will be excused."

Exception was taken. The procedure of excusing jurors upon the ground of "implied bias," as stated by the court continued until twenty jurors had been excused and the panel had been exhausted. The court thereupon ordered the sheriff to draw a new venire. The panel was then completed. There is no provision in the Code of Civil Procedure as to who shall examine the jury, comparable with Comp. Laws Utah 1917, § 8927, found in the Code of Criminal Procedure. That section provides:

"Trial juries for criminal cases are formed in the same manner as trial juries in civil cases, except that the examination of the jurors shall be conducted by the judge. The judge may permit counsel for either side to examine the jurors, but such examination by counsel shall be limited by the court. No action of the court under this section shall constitute error except in cases of clear abuse of discretion."

There is no complaint made of the court's making application of section 8927 or the examination as to method or effectiveness in arriving at the qualifications of the jurors. At the conclusion of the examination of the first eight jurors drawn, the court, having discovered that all the jurors were stockholders of plaintiff bank, without challenge, excused them as above indicated. The plaintiff assigns the court's action as error, exception having been duly taken. In the Code of Criminal Procedure there is a chapter 32, §§ 8936 to 8964, entitled "Challenging the Jury." There is a similar chapter in the Code of Civil Procedure, entitled "Trial by Jury" (chapter 28, §§ 6790-6816). Five of these sections in each chapter are identical in wording; others are nearly so, the differences being necessary in the application of the procedure to the respec-

tive purposes, civil or criminal. The examination of the jurors after it has been determined they possess the necessary statutory qualifications, whether by court or otherwise, is for the purpose of ascertaining in the individual case their qualifications, relationship of the parties, their interest, pecuniary or otherwise, in the subject-matter of the action, whether or not they are united in business with either party, the state of mind of the jurors, and their powers or ability to act fairly and impartially upon the matter that may be submitted to them. The trial court has great latitude in examining jurors on voir dire to ascertain their fitness and competency. Section 8927, supra; *State* v. *Gregorious* (Utah) 16 P. (2d) 893. The statutes relating to challenge have for their purpose, after qualifications have been determined, the selection of a jury from those qualified as nearly satisfactory to all parties as may be reasonably possible. The challenges to an individual juror provided for by statute are of two kinds: (1) For cause (Comp. Laws Utah 1917, §§ 6798, 6799, Civil Code; 8951, 8952, 8953, and 8954, Criminal Code), and (2) peremptory (6798 civil, and 8949 criminal). Each party is entitled to as many challenges for cause or for bias as may exist, and such number of peremptory challenges as the statutes provide, three in civil cases, Comp. Laws Utah 1917, § 6798, and from three to ten, depending upon the offense charged, in criminal cases, Comp. Laws Utah 1917, § 8950. The trial court undoubtedly has the power of its own motion to dismiss a juror lacking the statutory qualifications; but the juror having passed the court upon his statutory qualifications this court finds no statutory authority given to the trial court peremptorily or for cause or bias to challenge or excuse a juror of its own motion. The right of challenge rests with the parties, and upon the challenge for cause or bias, express or implied, the trial court is required to pass judgment and allow or disallow the challenge as the merits or want thereof appear. The fact that a juror sustains the relationship of debtor or creditor, master or servant, partner or united

in business, with either party does not disqualify the juror to act, but it gives the litigant the right to challenge for cause. Challenge for cause may be waived *Browning* v. *Bank of Vernal,* 60 Utah 197, 207 P. 462.

From what is stated in the record the defendant had ground for challenge of the jurors who were stockholders because of being united in interest. There are cases holding that a stockholder is incompetent to act as a juror in a case in which the corporation is a party. 35 C. J. 314. The Utah statutes provide who are competent (Comp. Laws Utah 1917, § 3597) ; who are incompetent (section 3598) ; who are exempt (section 3599) ; who may be disqualified, and thereby subject to challenge (sections 6799 and 8954).

It was an abuse of discretion, if not reversible error, for the trial court under the circumstances shown to dismiss the jurors of its own motion, without challenge, while no doubt the same result would have been arrived at by a more circuitous route of challenge, and while the better practice would have been to require the parties either to challenge the jurors for cause or be deemed to have waived objection thereto, we think the court should not have peremptorily excused the jurors. The appellant seems to have suffered no prejudice. A jury apparently satisfactory to both sides was ultimately secured.

The next specification of error is that relating to alleged errors respecting the reception and exclusion of evidence. For the present we shall pass this part of the discussion, and refer to it later, and proceed to the third specification, viz. : Insufficiency of the evidence "to sustain or justify the verdict, or the judgment on said verdict." The assignment specifies the particular grounds of error. It will be remembered this is an action by the bank against only one defendant, Mr. Hollingshead, an indorser upon a promissory note. It will also be kept in mind that this is a law case, and was tried to a jury. It is not necessary, therefore, to cite the numerous cases in which it has

been held that, "It is of no consequence what our opinion may be as to the facts. If there is substantial evidence to sustain the verdict, this court is powerless to set it aside." *Clark* v. *Ducheneau*, 26 Utah 97, 72 P. 331; *Sutton* v. *Otis Elevator Co.*, 68 Utah 85, 249 P. 437, 443. Many cases to this effect have been decided by this court.

In the last analysis of the defendant's claimed defense, the defense rests in payment. Put differently and more nearly in conformity with the allegations of the answer, the alleged payment amounts to a contract, the breach of which contract was in the application of the fund alleged to have been received from the surety company. The defendant, if he is to make good his defense, has the burden of proving a contract between himself and the plaintiff or one of which he can take advantage as to the breach thereof. These are defendant's allegations as to the matter of payment and upon which he relies as his defense: It was "expressly understood and agreed between the makers and said endorsers and the plaintiff herein that said money should only be deposited and held as security for said bond, and upon the fulfillment of the terms and conditions of said bond, said money should be returned to the plaintiff herein, and defendant alleges that said money was thereafter returned herein and was accepted by said bank, and fully paid and discharged the principal sum due upon said note." As heretofore stated, if there is any substantial evidence in support of the allegation last above quoted, it is not within the power of this court to disturb the verdict, or the judgment entered in pursuance thereof. Nor would it affect the rights of the plaintiff bank to recover from the defendant, if such contract existed between the defendant and Roberts, Burke, and Myers, if it were broken by Roberts, Burke, and Myers, or their representatives, if the plaintiff was not a party to such contract. Further, it would make no difference to plaintiff's rights, what representations Roberts, Burke, and Myers made (in this case Mr. Burke) by way of inducement to secure the indorsement of the defendant un-

less the plaintiff was a party thereto, or in some way became legally bound thereby. The plaintiff denies that there was any arrangement between the bank and Roberts, Burke, and Myers, and submits its proof accordingly, and further denies that it had any knowledge or information as to any representations made by Roberts, Burke, and Myers, or any one else on their behalf, or of any statements, representations, or inducements made or offered to the defendant. There is evidence in the record from the testimony of both Burke and Myers that there was such an agreement between Roberts, Burke, and Myers, that the contract between them and the plaintiff bank was substantially as alleged, and that they communicated the substance thereof to the defendant.

Let us carefully examine the testimony for the purpose of determining whether there is any substantial evidence to support the verdict of the jury. On this direct testimony, Mr. Hollingshead testified: That he resided at Minersville; that he knew Mr. Roberts, Mr. Burke, and Mr. Myers; that Oren Burke saw him at his home at Minersville, and no one else was present; that he said: "Steve, I have got a $5,000.00 note I would like for you to sign here"; that "this note was additional $5000.00 that was to be placed with the American Surety Company for security on a bond, and said this $5000.00 would remain with the American Surety Company until the completion of the Zion Canyon road, and the money would not be used unless the American Surety Company had to take the road over. If they didn't have to take the road over this money would be returned to the Beaver State Bank and pay out this $5000.00 note which I signed."

The witness then identified the note sued upon as the one he signed. He further testified:

"Q. Was there anything said at that time that you recall with respect to whether if they borrowed the money, deposited it, or deposited a certificate of deposit, that the certificate would draw interest? A. Yes sir.

"Q. What was said about that? A. Well, he said that the certificate would draw four per cent interest, the note would draw five.

"Q. They would pay five per cent for it? A. Yes sir.

"Q. And after he had made these representations with respect to this money remaining with the Surety Company and coming back to pay it off in the event the Surety Company didn't have to take over and spend money in the completion of the contract, did you then consent to sign the note? A. Yes sir.

"Q. I will ask you to state if there were any other or different representations or inducements made to you to sign, other than what you have stated? A. No sir.

"Q. And you may state whether or not at that time you signed this note by virtue of these representations. A. Yes sir. * * *

"Q. You heard the testimony, I take it, given by Mr. John R. Murdock a few days ago, that he had received the check back through Mr. Abe Murdock for $5050.95. A. Yes sir.

"Q. And that the money had come as testified to here from the American Surety Company? A. Yes sir.

"Q. Did you, yourself, have definite knowledge with reference to the —actual knowledge,—that money came back until you heard the testimony in open court? Did you, I say, have definite knowledge as to just how that money came back into the hands of the bank until you heard the testimony of Mr. Murdock? A. No sir.

"Q. They had received the money? A. I heard it had come back.

"Q. Didn't actually know how? A. Yes sir."

### On cross-examination Mr. Hollingshead also testified:

"Q. State again, will you, Mr. Hollingshead, just the conversation that you had, who you had it with, with respect to your endorsement of this note in question. A. I had a conversation with Mr. Oren Burke.

"Q. Was Mr. Burke alone with you at the time? A. Yes sir.

"Q. No one else present? A. No sir.

"Q. None of the bank officials present? A. No.

"Q. Mr. Roberts there? A. No sir.

"Q. Mr. Myers? A. No sir.

"Q. All right now, state—was this prior to the time you endorsed the note? A. Yes.

"Q. That you had this conversation. Just relate as near as you can what the conversation was. A. Mr. Burke asked me if I would sign a $5000.00 note for him. And I hesitated a little before I signed the note. Then he told me the purpose of the note. He said it was an additional $5000.00 security they had to put up with the American Surety Company for this bond. And he said that this $5000.00 would remain with the Surety Company until the completion of the Zion Canyon road. And if the Surety Company didn't take the road over,

why this $5000.00 would return to the bank, to the Beaver State Bank and pay off this $5000.00 note.

"Q. Now, did he say that the American Surety Company would return it to the bank, or that they would return it to him? A. He said the American Surety Company—

"Q. Would return it? A. Yes sir.

"Q. Are you sure that he mentioned the American Surety Company at that time, or just Surety Company? A. I don't just remember whether he mentioned the American Surety Company.

"Q. Just some surety company? A. Yes.

"Q. Is that all of the conversation, as you remember it, Mr. Hollingshead, between you and Mr. Burke, at that time? A. That is all I remember, yes sir.

"Q. And it was on that conversation, representations made by Mr. Burke, that you endorsed that note, is that not true? A. Yes sir.

"Q. What is your answer? A. Yes sir.

"Q. You never talked to the State Bank about the note, did you? A. No sir.

"Q. Before you signed it? A. No sir.

"Q. Never talked to them since about it, have you? A. No sir.

"Q. Do you know whether or not the money was ever returned to the State Bank of Beaver County? A. I heard it was.

"Q. Do you know whether or not Roberts, Burke and Myers ever got any money on that note you signed, of your own knowledge? A. I don't know they got it.

"Q. In fact, you don't know what was done with the note or anything else, do you? A. Well, Mr. Burke told me the note would be placed with the Beaver Bank.

"Q. Now, do you know whether or not the road was ever finished under the contract? A. No sir. * * *

"Q. The only reason that you signed the note in question, the $5000.00 note, was on the representations and inducements of Oren Burke? A. Yes sir.

"Q. The State Bank had nothing whatsoever to do with your signing that note, did they? A. No sir.

"Q. All the representations made by Mr. Burke were made to you prior to the time you endorsed that note? A. Yes sir."

The testimony of the defendant not only fails to give any support to the alleged contract; but on the other hand we think affirmatively shows there was no such contract between him and the bank, the only parties to this action. Upon Mr. Hollingshead's testimony alone, had the plaintiff

submitted no testimony at all, the plaintiff would be entitled to recover. We are therefore of the opinion that there is no substantial evidence to support the verdict; that the motion on the part of plaintiff for a directed verdict should have been granted, and judgment entered for plaintiff.

In view of the fact that the case must be reversed and sent back to the trial court for a new trial, it is not necessary to discuss all the other assignments of error.

Without making reference to the many assignments of error as to the matters pertaining to the trial court's rulings relating to the admissibility of evidence, and the rejection of offered evidence, an illustrative reference will suffice: On direct examination a witness for defendant, referring to the ledger or note bank account of Roberts, Burke, and Myers, was asked:

"Q. Do you find a credit of this amount, $5200.00 on that date? A. I find a credit of this amount $5200.00, November 12th.

"Q. That is of the Roberts, Burke, and Myers account? A. It states in the record here credit went to Roberts, Burke and Myers for $5200.00.

"Q. On some notes? A. That is what this shows."

On cross-examination the same witness identified the note upon which the credit was entered, and thereupon the plaintiff offered the note as part of the cross-examination. Objection thereto was made by defendant and sustained by the court. It was then offered to be shown that the defendant was a signer upon that note. The court refused to permit that to be shown, and later refused to permit counsel for plaintiff to make an offer of proof relating to the note.

"While no hard and fast rule can be laid down with respect to what may or may not be proper as part of a cross-examination, yet a general rule has been formulated by the courts which is ordinarily sufficient as a guide in most cases. This general rule is to the effect that the cross-examination should relate to the matters stated by the witness on direct examination, and to the facts and circumstances connected with or related to the matters stated by him. In other words, all matters that may modify, explain, contradict, rebut, or make clearer

the facts testified to in chief by the witness may be gone into on cross-examination. Ordinarily, when this field has been covered by the cross-examiner, the right, as an abstract right, to further cross-examine ceases. Beyond this the matter of cross-examination necessarily, to a very large extent at least, must be left to the sound discretion of the trial court." *Anderson* v. *Salt Lake & O. Ry. Co.*, 35 Utah 509, 101 P. 579, 581.

Here was a matter the very gist of the defendant's defense, viz.: The application of the fund received by John R. Murdock, from the surety company, testified to by the witness on direct examination. This was without question an abuse of discretion under the application of the rule above quoted. The witnesses Burke, and Hollingshead the defendant, were permitted to give a conversation between themselves, in the absence of plaintiff, neither of them claiming to be the agent or representative of the plaintiff in any capacity whatsoever. This was error. *Quealy* v. *Sullivan*, 42 Utah 565, 132 P. 4. Competent evidence was offered and rejected. The defendant had signed an agreement and power of attorney relating to the completing of the contract of Roberts, Burke, and Myers, as had also Roberts, Burke, and Myers. These powers of attorney were deposited with the bank as its warrant and authority for recognizing John R. Murdock as attorney in fact for the parties. These documents were rejected by the court. It needs no citation of authority as to the error of these rulings.

When the court submitted to the jury the question of the contract between the plaintiff and the defendant as to the purpose for which the money was loaned, and as to the payment of the note, and whether the money was returned by the surety company and deposited in the bank, and received by the bank as such money advanced on the note, and to be applied in payment thereon when and if received, the jury had a right to assume there was some evidence from which they had a right to make a finding. *Tyng* v. *Constant-Loraine Inv. Co.*, 37 Utah 304, 108 P. 1109. There being none, this was error.

Reference should also briefly be made to appellant's exceptions to the instructions given by the court to the jury. This court being convinced there was no substantial evidence offered by defendant in support of his defense, no detailed examination of the objectional instructions ▮▮▮ need be made. The only thing contended for by respondent for the instructions in reply to appellant's argument is:

"These instructions but presented respondent's theory of the case and as heretofore shown were justified by the pleadings, the evidence and the law."

It is proper and generally necessary for the court in its instructions to submit to the jury the theory of the case as presented by the defendant as well as that presented by the plaintiff. It is necessary, however, that whatever theories are presented by pleadings or otherwise, in order to be entitled to be submitted by way of instructions to the jury, some evidence must have been received by the court in support of such theory. Instructions to a jury must be responsive to the issues and of such nature that they are applicable to the evidence received and submitted to the jury. The court gave the following instructions:

"You are instructed that the plaintiff bank, would be bound and held responsible for any representations, or agreements made by its agent and cashier, John P. Barton, in respect to the loan in question; so that, if you shall find that the loan in question was made to the makers of the note sued on, and the endorsements of the defendant and others, was secured by reason of such representations or agreements, if you shall find there were any, and as set forth and pleaded in the answer of the defendant, which is set forth in instruction No. 1 of these instructions, and you shall further find that the money was returned by the surety company and deposited in the plaintiff bank and received it as such money advanced on said note then I charge you that the defendant would not be liable in this case, and it will be your duty to so find."

It may be pertinently asked: What application to any testimony in the case could the jury apply the following?

"You are instructed that the plaintiff bank, would be bound and held responsible for any representations, or agreements made by its agent and cashier, John P. Barton, in respect to the loan in question."

Had the cashier John P. Barton within the scope of his authority "made representations or agreements" on behalf of the bank to or with the defendant there would have been evidence to which the jury could have applied the instruction. We find no such evidence in the record. And further, "If you shall find that the loan in question was made to the makers of the note sued on, and the endorsements of the defendant and others, was secured by reason of such representations or agreements, if you shall find there were any, * * * the defendant would not be liable * * *" was part of the same instruction.

There was some evidence that some conversation was had between the makers and payee of the note. Whether such conversation, representations, or discussions amounted to an agreement may be very seriously doubted, even giving all that was said and done its most liberal and favorable construction for the makers. There is a complete absence of anything in the evidence that would make the instruction applicable to the defendant, and yet the instruction is so worded and constructed that it is evident the jury could make just that application of it. We think the giving of this instruction referred to as 7A was error. It is the duty of the court to instruct the jury as to the law applicable to the evidence of the particular case, having reference to the parties thereto. The language as was used might well have been employed in stating legal principles, but the litigants are entitled to have the law as declared made applicable to the particular facts of the case as they affect the parties to which they refer. *Smith* v. *Cannady*, 45 Utah 521, 147 P. 210; *Everts* v. *Worrell*, 58 Utah 238, 197 P. 1043.

Error being found in the proceedings of the trial court, the case is reversed and returned to the lower court, with directions to grant a new trial. Appellant to recover costs.

STRAUP, C. J., concurs in result.

ELIAS HANSEN and FOLLAND, JJ., concur.

EPHRAIM HANSON, Justice (concurring in part, dissenting in part).

I concur in the order reversing the judgment and remanding the case for a new trial for what is stated in the prevailing opinion that the "whole picture" is not fully "set up" by reason of the exclusionary rulings of the court, and of which the prevailing opinion seems to find error.

It should, however, be observed that this action is brought solely against the defendant upon a promissory note made by William Roberts, Oren Burke, and Ralph Myers, and upon which the defendant was but one of six indorsers. On the record it plainly appears that the defendant is an indorser for the accommodation of the makers of the note. The defense as pleaded in the answer, so far as pertinent to what is here stated, is set forth in the prevailing opinion to the purpose and effect that it was agreed between the plaintiff and the makers of the note and the indorsers that the consideration for the note (in this instance a certificate of deposit showing that the makers had deposited $5,000 with the plaintiff at 4 per cent per annum) would be deposited with the surety company as collateral, to keep and to hold the surety company free from any loss or damage which it might sustain by reason of its undertaking made in behalf and for the benefit of the makers of the note in respect to the contract referred to in the prevailing opinion. If no loss were sustained or liability incurred by the surety company by reason of its undertaking, then and in that event it would return the certificate of deposit to the plaintiff, and the plaintiff would apply the full face value thereof, including interest, toward the payment of such promissory note. The defendant asserts that the certificate of deposit was returned to the plaintiff. The evidence, however, shows that in lieu of the certificate of deposit a check made by

the surety company for the full amount was paid over to the plaintiff, but the whole amount thereof was not applied by the plaintiff toward the payment of the note.

In the plaintiff's reply it is asserted that "on the 11th day of September, 1923," the certificate of deposit was issued by said bank to the said contractors, and that at said time said contractors "made some mention * * * that they might be required to use said certificate as collateral security in securing said bond and that plaintiff is informed and believes and therefore alleges that the surety company issued said bond for the contractors, but before doing so the surety company required the contractors to assign said certificate of deposit to it as collateral."

It is my opinion that the defendant's answer states a good defense. This is not disputed by the plaintiff at any point in the entire proceedings. The controlling fact on which the prevailing opinion seems to rest is that the defendant did not himself make and enter into a contract with the plaintiff; that although the makers of the note may have made a contract such as is asserted in the defendant's answer, not only for themselves but for the benefit of the defendant, and which induced the defendant to indorse the note, it would not be available to the defendant as a defense. This is obivious from what is said in the prevailing opinion. After giving a fair and complete resume of the defendant's testimony to the effect that he himself had had no conversation or talk with the plaintiff in respect to the object and purpose of the fund to be created by the execution and delivery of the note, it is said:

"The testimony of the defendant not only fails to give any support to the alleged contract; but on the other hand we think affirmatively shows that there was no such contract between him and the bank, the only parties to the action. Upon Mr. Hollingshead's testimony alone, had the plaintiff submitted no evidence at all, the plaintiff would be entitled to recover. We are therefore of the opinion that there is no substantial evidence to support the verdict; that the motion on the part of plaintiff for a directed verdict should have been granted, and judgment entered for the plaintiff."

As is stated in the prevailing opinion, there is evidence in the record from the testimony of both Burke and Myers that the contract between them and the plaintiff was substantially as alleged by defendant, and that they communicated the substance thereof to defendant. It is also conlusively shown that the surety company did pay over its check in lieu of returning the certificate of deposit. The fact that the surety company paid over to the bank the amount of the certificate of deposit is, in my opinion, conclusive that it had not sustained any loss.

In view of the situation thus presented, I am unable to concur with the prevailing opinion in this respect. If there were an agreement between the plaintiff and the makers of the note to the effect that if the surety company sustained no loss by reason of its undertaking the amount of the certificate of deposit with interest thereon would be returned to the plaintiff and the plaintiff would apply the amount thereof toward the payment of the note sued upon, and the fulfillment or breach of such agreement would have the legal effect of releasing the makers from liability on the note, then, in my opinion, the defendant as an indorser would likewise be so released. It seems to me that if the maker of a note has a defense to the note, that defense is equally available to the indorser, irrespective of whether the indorser, the defendant in this case, was a party to such agreement. I am unable to concur in holding that where the makers of a note have a good defense thereto, the holder may nevertheless recover against the indorser by suing the latter alone.

Further, upon a new trial of the cause it cannot now be known what evidence may be offered by the defendant in response to the evidence of the plaintiff which was erroneously excluded at the former trial. I therefore think that this court should not at this stage express or intimate any opinion on the merits of the action.