McDaniel v. Lipp.

41  713
44  710

DORSEY McDANIEL, APPELLANT, v. VALENTINE LIPP ET AL., APPELLEES.

FILED SEPTEMBER 18, 1894.    No. 5812.

1. **Replevin**: BUILDINGS: PERSONALTY.  An action of replevin may be maintained for property which as between the parties is personalty.

2. **Injunction to Prevent Moving Building Under Writ of Replevin**: HOUSES AS PERSONALTY.  The judgment of the trial court, dismissing the action, approved and affirmed, as an examination of the evidence shows that it is insufficient to sustain the allegations of the petition or warrant the issuance of an injunction.

APPEAL from the district court of Douglas county. Heard below before HOPEWELL, J.

*John T. Cathers*, and *W. L. Peart*, for appellant.

*Lane & Murdock* and *W. W. Slabaugh, contra.*

HARRISON, J.

It appears in this case that on February 7, 1887, Valentine Lipp, of defendants, purchased lot 1, in block 114, in South Omaha, receiving therefor a contract of purchase, signed by the South Omaha Land Company, which contract, after a number of assignments, was finally assigned

to Fred and Ernst Stenger, who performed the conditions
and received a deed from the company, conveying the lot
to them, of date March 31, 1891. Soon after purchasing
the lot, Valentine Lipp built a house, or cottage, on what
he supposed was the lot, or a portion of it, for one O'Con-
nor, to whom he had contracted the house before building
it. O'Connor failed to pay for the house, and in a final
settlement had between them, some three months after the
erection of the cottage, it became the property of Lipp.
Lot 1, the evidence shows, was a portion of a hill which
sloped toward the alley of block 114, in which it was sit-
uated, and was very steep and could not in its condition,
at the time of purchase, be used for building purposes. It
further appears that the ground in the part of the city in
which it was located was very hilly and broken, and covered
with a growth of small timber and underbrush, and the
streets had not been opened or graded, and the lines of the
block and its lots were not easily discoverable by the ordi-
nary observer or searcher for them. Mr. Lipp made an
effort to discover them, without, however, having them
surveyed, and, supposing he had found them, put up the
house in controversy and afterwards ascertained that it
stood partly on the alley of block 114, back of lots 1 and
2 of the block, and partly on lots 17 and 18 of the same
block, and extended more than half the way across the alley
toward lot 1 from lot 18, the house standing on blocks of
wood placed under the corners. After the sale of the cot-
tage to O'Connor and its becoming again his property
through the latter's failure to pay for it, and releasing any
right to it, Lipp leased it and collected the rents during
several months, and at some date during this time mort-
gaged it to a Mr. Doud to secure a loan of $150, which,
immediately prior to this and other suits connected with it,
he paid and the lien was released. On or about April 3,
1891, the lots 17 and 18 referred to were purchased by
Dorsey McDaniel, the plaintiff herein, the agent from

whom they were purchased stating to him that the house was on lot 18 and he could move it up to the front a little and fix it up and make a residence of it.   Very soon afterwards McDaniel succeeded in inducing one Gray, the tenant of Lipp, to remove from the house, having, however, prior to Gray's removal, pried it up and moved it a short distance over toward lot 18.   After Gray moved out, McDaniel placed some of his own furniture in the house, which was thrown out at the instance of Doud, who was then claiming the right to a partial control, at least, of the house by virtue of his lien for the money loaned to Lipp.   It remained for a short time in the possession of the party holding it in Doud's behalf, but was abandoned by him, presumably when Lipp gave Doud other security and released this.   Then McDaniel (the parties moving it for him commencing on Saturday night at somewhere between 9 and 12 o'clock and working until afternoon of the Sunday following) had the house removed to about the center of lot 18, placed brick piers under it and built an addition to it, and sold it with lot 18 to Frank Lee about September or October, 1891.   The change of position of the house to the center of lot 18 was effected about the middle of April, 1891.   May 5, 1891, an action in replevin was instituted by Lipp to recover possession of the house, which was afterwards dismissed, and on May 14, 1891, he commenced another replevin action to get possession of the building and had spoken to one John Woodward to move the house, who informed McDaniel of it. This action was then commenced by McDaniel to enjoin Valentine Lipp, John Woodward, and A. A. Donnelly, constable, from removing or interfering with his possession of the house.   A trial of the case in the district court resulted in a finding in favor of defendants Lipp, Woodward, and Donnelly and a dismissal of the action, from which plaintiff appealed to this court.

It is very clear from the evidence that Lipp had always

considered and treated the house as personal property, and that it was not attached to lot 18 in such a manner as to become a part of it or belong to its owner, and that as between Lipp and McDaniel, when the last named party moved it over on his lot 18, it was personal property, and the act of McDaniel in moving it did not and could not change its character as such. (*Mills v. Redick*, 1 Neb., 437; *Central B. R. Co. v. Fritz*, 20 Kan., 430; *Hartwell v. Kelly*, 117 Mass., 235.) The evidence shows nothing further than that defendants proposed to attempt to take possession of the house by virtue of the action of replevin and the writ issued therein. There is no evidence of an attempt to interfere with the plaintiff's possession of the building in any other manner, or any threats of any other or different movements or efforts by defendants, or either of them, toward any molestation of the plaintiff in his enjoyment of it. That replevin was the proper action, see Cobbey, Replevin, secs. 363, 365; *Mills v. Redick*, 1 Neb., 437; *Fitzgerald v. Anderson*, 81 Wis., 341, 51 N. W. Rep., 554. It is very clear that the district court was right and its judgment of dismissal a correct one, according to the facts developed in the testimony in the case.

AFFIRMED.