*Realty—Fixtures—Chattels—Claim and Delivery—Purchase for
Value—Estoppel—Injunction—Pleadings—Complaint.*

Fixtures—Real Property—Wrongful Attachment to—Effect of Deed—
Innocent Purchaser.
    1.   Where one tortiously attaches to his land the house of another,
    then a chattel, by placing it upon a stone foundation, such house
    does not thereby become a part of the realty of the tort-feasor;
    hence, title to the house, good as against the original owner thereof,
    cannot be acquired by deed of the land with its appurtenances
    and improvements.

When Chattels Become Fixtures.
    2.   A chattel, to become an irremovable fixture, must have been
    annexed to the realty by the owner of the fixture, or with his
    consent.

Chattels—Fixtures—Realty—Claim and Delivery.
    3.   Where one wrongfully attaches to his realty another's chattels,
    and without the latter's knowledge or consent, such chattels may be
    reclaimed in an action in claim and delivery, if they can be identi-
    fied.

Same—Wrongful Attachment to Realty—Purchaser for Value—When
Defense not Available.
    4.   In the absence of statute, the defense of purchase for value
    and without notice is not available against the holder of the legal
    title; therefore, the person who claimed to have bought the house,
    referred to in paragraph 1, above, from the party who had tortiously
    attached it to his land and, thus, had not any title at all,—could not
    interpose such defense to the claim of the rightful owner.

Purchaser for Value—When Defense Available.
    5.   *Obiter:* The defense of purchase for value and without notice
    may be interposed only as against the holder of an equitable title.

Estoppel—Pleadings.
    6.   Since, to be available as a defense, estoppel must be pleaded,
    defendant in the action mentioned above, who failed to so plead,
    though he had ample opportunity so to do, could not rely upon that
    defense.

Pleadings—Injunction—Complaint—Requisites.
    7.   Plaintiff in his complaint for an injunction restraining a sheriff
    from removing a house, theretofore adjudged in an action in claim
    and delivery to belong to one from whom it had been wrongfully
    taken, attached to the tort-feasor's land and later by him sold to
    plaintiff, simply alleged that he had no plain, speedy or adequate
    remedy at law.   He failed to state that the sheriff was insolvent, or
    that his official bond was insufficient; nor was there an allegation

that the injury which would be occasioned to plaintiff by removal of the house, could not be compensated in damages. *Held,* that in the absence of such allegations, the complaint failed to state a cause of action for an injunction.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

Suit for injunction by John Eisenhauer against John J. Quinn, as sheriff of Silver Bow county, and Tony Gerarci, intervener. From a decree in favor of plaintiff and an order denying them a new trial defendant and intervener appeal. Reversed and remanded.

*Mr. M. P. Gilchrist,* and *Mr. W. D. Kyle,* for Appellants.

A chattel to be an irremovable fixture must have been annexed by the owner thereof. (Bronson on Fixtures, 73; 13 Encyclopedia of Law, 2d ed., 604; *Cochran* v. *Flint,* 57 N. H. 514; *Shoemaker* v. *Simpson,* 16 Kan. 43; *Central Branch R. R. Co.* v. *Fritz,* 20 Kan. 430, 27 Am. Rep. 175; *Michigan Mut. L. Ins. Co.* v. *Cronk,* 93 Mich. 49, 52 N. W. 1035; *Page* v. *Urick,* 31 Wash. 601, 96 Am. St. Rep. 924, 72 Pac. 454; *March* v. *Mc-Koy,* 56 Cal. 85.) A person cannot be devested of his title to property without his consent. (*Adams* v. *Tully,* 164 Ind. 292, 73 N. E. 595; *Churchill* v. *More* (Cal. App.), 88 Pac. 290; *Lorain Steel Co.* v. *Norfolk etc. Ry. Co.,* 187 Mass. 500, 73 N. E. 646; 19 Cyc. 1057.)

"One cannot be a *bona fide* purchaser of stolen property within the meaning of the law." (Shinn on Replevin, sec. 278.) The doctrine of innocent purchaser is only applicable where the one invoking it is clothed with the legal title and not a mere equity. (24 Am. & Eng. Ency. of Law, 1169; *Anketel* v. *Convers,* 17 Ohio St. 11, 91 Am. Dec. 115; *Sampeyreac* v. *United States,* 7 Pet. 222, 8 L. Ed. 665; see, also, *Parish* v. *Morey,* 40 Mich. 417; *Barstow* v. *Savage M. Co.,* 64 Cal. 391, 49 Am. Rep. 705, 1 Pac. 349; *Klein* v. *Seibold,* 89 Ill. 540; *Wilson* v. *Crocket,* 43 Mo. 216, 97 Am. Dec. 389; *Sherburne* v. *Strawn,* 52 Kan. 39, 34 Pac. 405.)

*Mr. E. M. Lamb,* for Respondent.

The property in controversy was real property in the eyes of the law, and a *bona fide* purchaser without notice is entitled to rely upon the record title. (*Murray* v. *Lylburn,* 2 Johns. Ch. 441; see, also, *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80, 84 Am. St. Rep. 867, 85 N. W. 698, 53 L. R. A. 603; *Muir* v. *Jones,* 23 Or. 332, 31 Pac. 646, 19 L. R. A. 441; *Jackson* v. *Walton,* 28 Vt. 43; *Salter* v. *Sample,* 71 Ill. 430; *Kassing* v. *Keohane,* 4 Ill. App. 460; *Bringholff* v. *Munzanmaier,* 20 Iowa, 513; *Ridgeway Stove Co.* v. *Way,* 141 Mass. 557, 6 N. E. 714; *Fryatt* v. *Sullivan Co.,* 5 Hill, 116.) An innocent purchaser without notice or knowledge takes property. (*St. Louis & S. F. Ry. Co.* v. *Beadle,* 6 Kan. App. 922, 50 Pac. 988; *Landigan* v. *Mayer,* 32 Or. 245, 67 Am. St. Rep. 521, 51 Pac. 649; *Tibbetts* v. *Horne,* 65 N. H. 242, 23 Am. St. Rep. 31, 23 Atl. 145, 15 L. R. A. 50; Bronson on Fixtures, 155-164; also 374 and note; *Prince* v. *Case,* 10 Conn. 375, 27 Am. Dec. 675.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In September, 1901, Tony Gerarci was the owner of a certain two-room frame dwelling-house, which he had purchased from H. L. Frank. The house was sold to Gerarci separate from the ground upon which it stood, and he immediately started to remove it to another location. One H. H. Smith thereupon wrongfully, without Gerarci's knowledge or consent, took possession of the house and moved it about, and finally located it at 132 West Platinum street, in Butte, partly upon ground purchased by him from Hayes Cannon, and partly upon land belonging to Cannon. In July, 1902, Gerarci commenced an action in claim and delivery against Smith and others to recover possession of the house. This action was not finally determined until 1904, when Gerarci recovered judgment for the possession of the house or its value. In the meantime, in 1903, Smith and Cannon sold to John Eisenhauer the land upon which the house then

stood, and Smith assumed to sell the house also.  Immediately after recovering his judgment, Gerarci had execution issued and placed in the hands of the sheriff.  When the sheriff undertook to levy the writ, Eisenhauer instituted this suit to secure an injunction restraining the sheriff from removing the house. Gerarci filed a complaint in intervention.  The sheriff answered. Issues were joined, the case tried to the court without a jury, and a decree rendered and entered in favor of the plaintiff. From that decree and an order denying a new trial, the defendant and intervener appeal.

In deciding the case the court said: "When Smith attached Gerarci's house to his (Smith's) realty it became a part of the freehold and passed to Eisenhauer on sale and conveyance to him by Smith, Eisenhauer being a *bona fide* purchaser without notice."  In passing upon the motion for a new trial, however, the court held that when Smith seized the house, Gerarci should have asserted his right and should have prevented Smith from attaching the house to Smith's realty, and, after Smith had so attached it, Gerarci should have taken possession of it in his claim and delivery action, or should have filed a notice of *lis pendens*, and having failed to do any of these things, after Smith had sold the property to Eisenhauer, Gerarci was estopped to assert his claim of ownership as against Eisenhauer.

These questions only need to be determined: (1) Where Smith tortiously attaches Gerarci's house, which was then a chattel, to land belonging to Smith and Cannon, by placing it upon a stone foundation, does the house thereby become a part of the real estate as between Gerarci and Eisenhauer, so that by deed of land with its appurtenances and improvements Smith and Cannon could convey to Eisenhauer a title to the house sufficient to defeat Gerarci's claim to the house itself?  (2) Is the defense that he was a *bona fide* purchaser for value, without notice, available to Eisenhauer as against Gerarci, the holder of the legal title to the house in question?  (3) Is the defense of an estoppel available to Eisenhauer?  And (4) does the com-

plaint state facts sufficient to entitle the plaintiff to an injunction?

1. Upon the first proposition many decisions are cited by counsel for the respective parties, all bearing somewhat upon the general proposition, but, with a single exception, presenting facts so different from those in the case now under consideration, that they do not render any aid in reaching a solution of the question before us. The exception noted is the case of *Shoemaker, Miller & Co.* v. *Simpson,* 16 Kan. 43, which is somewhat analogous to the case before us. Shoemaker, Miller & Co. owned certain bars of railroad iron, or rails, near Wyandotte, Kansas. Simpson owned certain city lots in Lawrence. The Kansas Pacific Railway Company wrongfully took Shoemaker, Miller & Co.'s rails, hauled them to Lawrence, and with them and cross-ties laid a track over Simpson's lots for the purpose of hauling sand. The rails were taken without the knowledge or consent of Shoemaker, Miller & Co., and placed on Simpson's lots without his consent. Shoemaker, Miller & Co. brought an action in replevin against Simpson to recover the rails. Simpson defended upon the theory that when the rails were fixed to the cross-ties imbedded in his land, they thereby became a part of his real estate. The trial court found for the defendant, but on appeal the judgment was reversed, the supreme court saying, among other things: "We know of no way by which an innocent person can be permanently and legally deprived of his property against his will by the wrongs and trespasses of others, so long as it remains within the power of such innocent person to reclaim his property without committing any serious or substantial injury to the person or property of any other person." And again: "But we do not think that any innocent person can be deprived of the title of his personal property against his consent by having it attached without his consent to the real estate of another by a third person, where such personal property can be removed without any great inconvenience, and without any substantial injury to the real estate."

The question, when does a chattel become a part of realty so that it passes as a part of such realty, is one most difficult of solution. It depends upon such a variety of considerations that every case must necessarily depend upon its own state of facts. There is no universal test whereby the character of what is claimed to be a fixture can be determined in the abstract. But one of the elementary rules of the law of fixtures is that a chattel, to become an irremovable fixture, must have been annexed to the realty by the owner of the fixture, or with his consent. (Bronson on Fixtures, 73; 13 Am. & Eng. Ency. of Law, 2d ed., 604; *Adams* v. *Lee,* 31 Mich. 440; *Cochran* v. *Flint,* 57 N. H. 514; *Lansing Iron & Engine Works* v. *Wilbur,* 111 Mich. 413, 69 N. W. 669; *General Electric Co.* v. *Transit Equipment Co.,* 57 N. J. Eq. 460, 42 Atl. 101.)

With the exception of property taken by judicial process, no one can be deprived of property to which he has the legal title, without his consent, unless he has estopped himself to assert his title. And where A attaches B's chattels to A's realty wrongfully, and without the knowledge or consent of B, B may maintain replevin, or claim and delivery, to recover the same, if the chattels can be identified. (Bronson on Fixtures, 351; 13 Am. & Eng. Ency. of Law, 2d ed., 681; *McDaniel* v. *Lipp,* 41 Neb. 713, 60 N. W. 81.) There is no question but what the property in this instance was sufficiently identified by Gerarci, even though certain changes had been made in it after it left his possession.

Under the facts disclosed by this record then, we hold that Gerarci did not lose title to his property by reason of the tortious acts of Smith; and this is true whether Eisenhauer had knowledge of Gerarci's claim at the time he purchased the property or not.

2. But particular stress is laid by respondent upon the proposition that he was an innocent purchaser for value, without notice of Gerarci's claim. This contention, however, cannot prevail. Gerarci had the legal title to the house. Smith had not any title at all. It is a general rule in this country that, in the absence

of statute, the defense of purchase for value and without notice is not available against the holder of the legal title. (*Gaines* v. *New Orleans*, 6 Wall. (U. S.) 642, 18 L. Ed. 950; *Stout* v. *Hyatt*, 13 Kan. 232; 23 Am. & Eng. Ency. of Law, 2d ed., 482, and cases cited; 24 Am. & Eng. Ency. of Law, 2d ed., 1169; 19 Cyc. 1052.) But such a defense may be interposed as against the holder of an equitable title only. (19 Cyc. above.)

3. In denying the motion for a new trial the district court held that Gerarci had estopped himself to urge his title to the property, and in making the order said: "But for estoppel, I am of the opinion Gerarci would be entitled to recover even from Eisenhauer, a *bona fide* purchaser." This position, however, is altogether untenable. Gerarci in his complaint in intervention set forth his claim to the property, and recited at length the history of his litigation with Smith concerning it. Eisenhauer answered this complaint, but, though he had ample opportunity to do so, he did not plead an estoppel.

In *Capital Lumber Co.* v. *Barth*, 33 Mont. 94, 81 Pac. 994, this court announced the rule as follows: "It is the general rule that matter of estoppel, to be effective, must be alleged. Where, however, there has been no opportunity to allege it, it may be given in evidence with the same conclusive effect as if alleged. In *Isaacs* v. *Clark*, 12 Vt. 692, 36 Am. Dec. 372, it is said: 'It is no doubt true that where the party has an opportunity to plead the estoppel he is bound to do it, and if he omits it, the jury will not be bound by the estoppel, but may find according to the facts. If, however, there has been no opportunity to plead the matter as an estoppel, it may, in general, be given in evidence, and it will have the same conclusive effect as in cases where it is pleaded. This is according to the current of the authorities, though they may not have been entirely uniform.' " However effective an estoppel might have been, if pleaded and proved, it is not available to Eisenhauer in this instance, since he did not plead it.

4. Appellants contend that the complaint does not state facts sufficient to constitute a cause of action for an injunction. While

the complaint alleges that plaintiff has no plain, speedy or adequate remedy at law, there are not any facts stated from which such a conclusion could be drawn. If in removing the house the sheriff acted wrongfully and to plaintiff's injury, he would be liable. There is not any allegation that the sheriff is insolvent, nor that his official bond is not ample. Neither is there any allegation from which it can be said that the injury to plaintiff, by a removal of the house, could not be amply repaired by damages. It is elementary that before one can go into a court of equity he must show that he has not a plain, speedy or adequate remedy at law. We think the complaint fails, in this regard, to state a cause of action for an injunction.

In *Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46, this court said: "If plaintiffs had a plain, adequate and complete remedy at law, a court of equity should refuse to take jurisdiction; and, indeed, it would be without jurisdiction, for equity may act in those matters only in which no remedy is afforded in the ordinary course of law, or in which the remedy at law is deficient." (See, also, *McCormick* v. *Riddle,* 10 Mont. 467, 26 Pac. 202.)

The judgment and order are reversed, and the cause remanded, with directions to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.