## SCOTT, Respondent, *v.* PRESCOTT, Appellant.

(No. 5,320.)

(Submitted January 25, 1924. Decided February 11, 1924.)

[223 Pac. 490.]

*Partnership — Accounting — Corporations — Corporate Entity Disregarded—Estoppel—Promissory Notes—Parol Testimony —Admissibility.*

Equity—Findings—When Conclusive on Appeal.

1. On appeal in an equity case the findings of the trial court will not be set aside unless there is a decided preponderance in the evidence against them; nor will they be disturbed where the evidence furnishes reasonable grounds for different conclusions.

[69 Mont. 540.]

Partnership—Accounting—Evidence Held to Show That a Corporation was in Fact a Partnership.

2. Evidence in an action for a partnership accounting *held* to show that the partnership agreement was not abrogated by an alleged subsequent formation of a corporation, but that the alleged corporation, two directors of which were mere dummies without any interest in it other than to lend their names as a matter of form and which never declared any dividends but the large profits of which were divided proportionately between plaintiff and defendant, was a mere fiction and served no other function than that of a partnership.

Promissory Notes—Parol Testimony Admissible to Show Purpose for Which Given.

3. Where the purpose of parol testimony relative to the giving of a promissory note was not to avoid payment but to show the particular engagement or obligation which induced its execution—plaintiff claiming that it was for an interest in a partnership and defendant asserting that it had been given in payment of stock in a corporation formed out of the partnership—it was not open to the objection that it was inadmissible as tending to vary the terms of a written instrument.

Estoppel—Pleading Necessary—When Evidence Admissible Without Pleading.

4. To make proof of an estoppel admissible it must be pleaded; but where there has been no opportunity to allege it, it may be given in evidence with the same effect as if alleged.

Same—Party not Injured by Conduct of Another may not Claim Estoppel.

5. Estoppel is interposed against guilty conduct to prevent imposition, deception and injury to others acting in good faith in reference to the subject matter of a dispute; therefore, where plaintiff and defendant in a partnership accounting were the only persons financially interested in an alleged corporation which was in fact a partnership, and defendant could not be injured by a holding that the corporation was a mere fiction, he was in no position to insist that plaintiff, who had acted as manager of the concern for a number of years, was estopped to deny the existence of the corporation.

Corporations—Corporate Entity may be Disregarded by Court of Equity, When.

6. Where the ends of justice require it, corporate entity will be disregarded by a court of equity, as where the business of the corporation is being conducted by dummies or where it is used as a mere fiction under the cloak of which business is being transacted.

Partnership Accounting—Net Profits Based on Federal Income Returns Erroneous Basis.

7. In an action for a partnership accounting, *held* that the court erred in arriving at the net profits made by the concern in basing its conclusion of their amount upon the federal income tax made by defendant, since only a portion of the net income so reported was actual cash, a large portion thereof consisting in increases in valuation or accumulation of property in the conduct of ranch operations conducted by the parties.

*Appeal from District Court, Lewis & Clark County; W. H. Poorman, Judge.*

SUIT by W. H. Scott against A. K. Prescott. Judgment for plaintiff and defendant appeals. Modified and, as modified, affirmed.

*Mr. T. B. Weir* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Carl Rasch* argued the cause orally.

The finding and conclusion of the trial court that a copartnership was brought into existence between the plaintiff and defendant at Brady, Montana, on the first day of October, 1907, is not supported by any evidence nor sustained by any rule or principle of law. As found and held by the court, the pretended agreement made the partnership, the purchase of the third interest in the property, the part payment of the purchase price and the vesting of title in the plaintiff, accomplished facts, creating the partnership and making it, then and there operative and effective, while, according to plaintiff's showing, these various things were in contemplation, their consummation was intended, but the means of carrying these intentions into effect had not been determined, except that a partnership arrangement had been mentioned and adverted to, and there is nothing in the plaintiff's pleadings, nor in his evidence, which furnishes a basis for the court's finding and conclusion that a partnership between the plaintiff and the defendant was then and there brought into existence.

The rule is well settled that there is a vast difference between a partnership actually formed and what we have here in the case at bar, an agreement to form a partnership. (See *Eagle Drug Co.* v. *White* (Tex. Civ.), 182 S. W. 378; *O'Neal* v. *Moore,* 78 W. Va. 296, 88 S. E. 1044; *Beasley* v. *Berry,* 33 Mont. 477, 84 Pac. 791; *Martin* v. *Baird,* 175 Pa. St. 540; 34 Atl. 809; *Taylor* v. *Nelson,* 26 Cal. App. 681, 147 Pac. 1189; *Beaver* v. *Slane,* 271 Pa. St. 317, 114 Atl. 509; *Brown-King Construction Co.* v. *Bower,* 251 Fed. 769, 164 C. C. A. 3; *Haskins* v. *Burr,* 106 Mass. 48; *Lucopoulos* v. *Sotiopoulus,* 111 Wash. 400, 191 Pac. 149.)

Whatever the pretended partnership agreement amounted to, it was abrogated by the agreement made in January, 1908, and the carrying out of that agreement in organizing the South Pondera Ranch Company and conducting the business thereafter as a corporate concern. If we assume, *arguendo,* that a partnership agreement was made in October, 1907, that agreement was superseded by the one made in January, 1908, when it was definitely arranged to organize the corporation and run the business as a corporate affair. Under the settled rules of law applicable to that situation the pretended partnership agreement of October, 1907, was annulled, abrogated and superseded and the agreement of January, 1908, became "the only agreement between the parties on the subject." (*Bader* v. *Moore Bldg. Co.,* 94 Wash. 221, 162 Pac. 8; *Housekeeper Pub. Co.* v. *Swift,* 97 Fed. 290, 38 C. C. A. 187; *Wright* v. *Great Eastern Casualty Co.* (Mo. App.), 206 S. W. 428.)

The pretended partnership agreement found by the court to have been made on the first day of October, 1907, is void under the statute of frauds. A parol agreement, creating a partnership and giving the partners an interest in real estate owned by a partner at the time of the formation of the firm, is an agreement for the sale of the real estate, within the statute of frauds, and is void. (*Burgwyn* v. *Jones,* 113 Va. 511, Ann. Cas. 1913E, 564, 41 L. R. A. (n. s.) 120, 75 S. E. 188; *Birbeck* v. *Kelly* (Pa. St.), 9 Atl. 313; *Goldstein* v. *Nathan,* 158 Ill. 641, 42 N. E. 72.) In *Brewer* v. *Cropp,* 10 Wash. 136, 38 Pac. 866, it was held that "An oral contract between the members of a copartnership to convey firm realty from one to the other is void." (*Lake Erie etc. Ry. Co.* v. *Michigan etc. Ry. Co.,* 86 Fed. 840, 845; *Roberts* v. *Templeton,* 48 Or. 65, 3 L. R. A. (n. s.) 790, 80 Pac. 481.) "If the contract is void as to the real estate, the plaintiff cannot enforce it as the personalty either, for, being void in part, it is void as a whole." (*Swash* v. *Sharpstein,* 14 Wash. 426, 32 L. R. A. 796, 44 Pac. 862; *Dennis* v. *Kuster,* 57 Kan. 215, 45 Pac. 602; *Todd* v. *Eddington,* 98 Minn. 170, 8 Ann. Cas. 960,

and note, 107 N. W. 1049; *Fuller* v. *Reed*, 38 Cal. 99; *Peterson* v. *Nichols*, 110 Wash. 288, 188 Pac. 498.)

*Mr. Henry C. Smith, Messrs. Pray & Toole, Mr. E. E. Sweitzer* and *Mr. J. A. McDonough,* for Respondent, submitted a brief and one in reply to that of Appellant; *Mr. Smith* argued the cause orally.

The ordinary rules for construction of contracts in general apply to the construction of articles of partnership. Thus, if the terms of the agreement are ambiguous, the construction followed by the parties will control. (*Rathbun* v. *McConnell,* 27 Neb. 239, 42 N. W. 1042; *Snyder* v. *Seaman,* 37 N. Y. Supp. 137.) Where a party to a written agreement claimed that such instrument was intended to be and was a partnership agreement, and seeks an accounting and equitable relief, evidence as to the construction put upon it by the parties themselves is admissible. (*Causten* v. *Barnette,* 49 Wash. 659, 96 Pac. 225.) Even if not ambiguous, it has been held that the circumstances surrounding its execution and the subsequent acts of the parties may be looked to in order to discover their intentions. (*Rush* v. *First Nat. Bank* (Tex. Civ.), 160 S. W. 319.)

The partnership agreement found by the court to have been made on October 1, 1907, is not void under the statute of frauds. A parol contract of partnership which is to take effect immediately without any stipulated time for its duration is not within the statute. (*Stitt* v. *Rat Portage Lumber Co.,* 98 Minn. 52, 107 N. W. 824; *McNealy* v. *Bartlett,* 123 Mo. App. 58, 99 S. W. 767; *Sanger* v. *French,* 157 N. Y. 213, 51 N. E. 979 (Rev. 36 N. Y. Supp. 653); *Smith* v. *Tarlton,* 2 Barb. Ch. (N. Y.) 336; *Hatzfeldt* v. *Walsh,* 55 Tex. Civ. 573, 120 S. W. 525; *Jordan* v. *Miller,* 75 Va. 442; *Treat* v. *Hiles,* 68 Wis. 344, 60 Am. Rep. 858, 32 N. W. 517; *McKay* v. *Rutherford,* 6 Moore P. C. 413, 13 Eng. Reprint, 743.) The contract is not within the statute although it is to continue for a term of years, if by its terms it may be sooner dissolved

by the consent of the parties. (*Girton* v. *Daniels,* 35 Nev. 438, 129 Pac. 555.)

The partnership agreement was not abrogated by the pretended organization of the sham corporation known as South Pondera Ranch Company. The rule as to the existence of a partnership relation follows the general rule, and if a partnership is shown to exist, a presumption arises that it continues until a dissolution is shown and that it continues under the same terms and conditions. (*Southmayd* v. *Southmayd,* 4 Mont. 100, 113, 5 Pac. 318; *Butler* v. *Henry,* 48 Ark. 551, 3 S. W. 878; *Irby* v. *Brigham* (Tenn.), 9 Humph. 750; *Mann* v. *Clapp* (Tex.), 1 White & W. Civ. Cas. Ct. App. 502; *Reybold* v. *Dodd,* 1 Harr. (Del.), 401, 26 Am. Dec. 401.)

HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, disqualified, delivered the opinion of the court.

This is a suit for a partnership accounting. Plaintiff was awarded a judgment for $53,887.87, and a decree entitling him to an undivided one-third interest in about 3,000 acres of land. Defendant has appealed from the judgment and decree. The pleadings, transcript of the evidence, decree and briefs cover more than 2,000 pages. Owing to their length it seems inadvisable to attempt a summary of the issues presented and the points raised by this appeal at this place, but reference to them will be made in the body of the opinion as necessity arises.

The complaint, among other things, alleges that on October 1, 1907, plaintiff and defendant formed a partnership for the purpose of engaging in ranching and stock-raising in Teton county; that the partnership continued in active business until March 19, 1918, when it was dissolved by the defendant.

The answer denies that any partnership relation was ever entered into, and among other things alleges that plaintiff merely sustained the relation of employee or servant of the South Pondera Ranch Company, a corporation, of which de-

fendant was the principal stockholder; that on February 20, 1908, defendant agreed to sell to plaintiff 2,400 shares, or one-third of the capital stock, of the said South Pondera Ranch Company for the sum of $24,741.76; that of this amount $1,701.76 was paid, and that plaintiff gave his note for the balance due in two years, at nine per cent interest per annum; that the stock was placed in escrow, title to which was to pass and delivery to be made when the note with accrued interest was fully paid, and that as a further term and condition of said contract of sale of said stock plaintiff and his wife, Elizabeth F. Scott, did agree with defendant that plaintiff and his wife should during the existence of said agreement work for and devote their time and attention exclusively to the interests of said corporation at said ranch in Teton county, Montana, and reside thereon, and that they should receive as wages the sum of $100 per month; that no other payments were made on said note except the sum of $3,796.60, paid on December 31, 1912, making a total of $5,498.36; that plaintiff has forfeited his right to demand and receive said shares of stock. Defendant offers to return the said sum of $5,498.36 paid on the note, and prays for judgment for costs of suit.

The case was tried before the court sitting with a jury. At the conclusion of all the evidence both plaintiff and defendant moved for a directed verdict, whereupon the court discharged the jury and made findings, among other things, that on October 1, 1907, at Brady, Montana, plaintiff and defendant entered into a copartnership for the purpose of engaging in ranching and raising livestock and dealing and trading in real and personal property; that the partnership property consisted of a ranch of 1,560 aces, 10,500 head of sheep, and some horses, cattle and ranch equipment, all inventoried at the agreed value of $72,278.23, of which plaintiff purchased a one-third interest at $24,000, defendant retaining a two-thirds interest at $48,000, and receiving a personal credit for the balance of $278.23; that plaintiff received a credit of $1,701.76 on the purchase price of his one-third interest on account of

wages then found to be due from defendant, and that the balance, at nine per cent interest, was to be paid out of plaintiff's share in the net profits; that plaintiff was to manage the ranch and livestock as a going concern for the mutual advantage of himself and defendant, and was to receive $100 per month, as partial compensation for his services, and one-third of the net profits; if additional funds were needed they were to be loaned by defendant to the partnership at nine per cent interest; that plaintiff immediately went into full and complete physical possession and control of said real and personal property, and devoted his personal skill and labor and special services in making extensive and valuable improvements on the same; that the plaintiff, although well skilled and experienced in managing ranches and particularly in operating bands of sheep was lacking in financial experience and wholly unfamiliar with the method of operating a partnership or corporation; that the defendant was a business man of long experience and well skilled in the management of partnerships and corporations; that after the formation of the partnership, and while the plaintiff and defendant were operating the said ranch and personal property as copartners, on or about February 17, 1908, the defendant assumed to form a Montana corporation under the name of South Pondera Ranch Company for defendant's own personal uses, purposes and benefits, which said company is now and at all times was absolutely owned and controlled by defendant personally and exclusively; that defendant named himself, Mary B. Prescott, his wife, and F. K. Turner, his brother-in-law, as incorporators and directors of South Pondera Ranch Company, but neither Mary B. Prescott nor F. K. Turner ever paid for, purchased or acquired any stock in said corporation, and neither of them now has or ever did have any interest in said company or the capital stock thereof, but their names were simply used by defendant, and they were dummy shareholders and directors only, and said defendant was the sole owner of said corporation, and said corporation is and was simply a fiction of law

and a sham device adopted by the defendant for the purpose and with the intent of taking advantage of and cheating, wrongdoing and defrauding plaintiff; that defendant transferred the legal title to all the partnership lands which had theretofore stood in the name of the defendant to said South Pondera Ranch Company; that at defendant's request and on his representations that said company was only a matter of form and that the signing of a note to defendant was the proper way to show the partnership transaction and to evidence the unpaid balance of the purchase price of plaintiff's one-third interest in the partnership assets, plaintiff on February 20, 1908, executed and delivered to defendant his note for $23,040, payable in two years, with interest at nine per cent.

The court further finds that on March 19, 1918, defendant ousted plaintiff and assumed entire control of all the partnership property, real and personal, and dissolved the partnership; that defendant disposed of all the sheep and practically all of the remaining personal property, and appropriated the proceeds to his own use.

The court then renders an accounting of the partnership affairs, as of March 19, 1918, and finds that, in addition to the real estate standing in the name of the Pondera Ranch Company, the value of the personal property belonging to the copartnership on that date was $195,246.64; that there are no partnership debts except the sum of $705.21, due plaintiff for wages. After allowing for the mutual liabilities of the partners, including the unpaid balance of plaintiff's note, the court finds there was due from defendant to plaintiff as of March 19, 1918, exclusive of his interest in the real estate, the sum of $40,081.89, to which was added interest from March 19, 1918, to the date of the judgment at eight per cent in the sum of $13,805.98, making a total of $53,887.87 due plaintiff from defendant, for which judgment was entered against defendant in plaintiff's favor. The court further ordered proper conveyances to be made showing plaintiff's undivided one-

[69 Mont. 540.]

third and defendant's undivided two-thirds interests in the partnership lands. It was further ordered that, since the lands could not be equitably divided, they might be sold at public auction and the proceeds divided in case conveyances were not made as ordered.

Defendant insists, first, that the finding that a copartnership was brought into existence between plaintiff and defendant on October 1, 1907, is not supported by the evidence nor sustained by any rule of law, and, second, that, whatever the pretended agreement amounted to, it was abrogated by a later agreement made in January, 1908, and the carrying out of that agreement in organizing the South Pondera Ranch Company and conducting the business thereafter as a corporation; and further, that there is no evidence in the case justifying the finding that the South Pondera Ranch Company was a fiction of law and a sham device adopted by the defendant to cheat, wrong and defraud the plaintiff; and further, that the pretended partnership agreement found by the court to have been made on October 1, 1907, is void under the statute of frauds.

At this point attention should be called to the fact that defendant has chosen to rest his case on the record as presented by the plaintiff. He called no witnesses and confined his own testimony in defense to the identification of some documents which were received in evidence in his behalf. Hence the greater part of the evidence received stands uncontradicted. Since the enactment of section 8805, Revised Codes of 1921, this court, by a uniform line of decisions has observed the rule [1] that on appeal in equity cases the findings of the trial court will not be set aside unless there is a decided preponderance in the evidence against them; and when the evidence as it appears in the record, fully considered, furnishes reasonable ground for different conclusions the findings will not be disturbed, for the reason that the trial judge and jury have the superior advantage of hearing the testimony and observing the appearance and demeanor of the witnesses on the

stand. (*Kummrow* v. *Bank of Fergus County*, 66 Mont. 434, 214 Pac. 1098.)

First, as to the formation of the partnership on October 1, 1907: On this point the evidence is positive and unequivocal and enters into great detail, showing that a partnership agreement was entered into on October 1, 1907, exactly as claimed by the plaintiff, that an itemized inventory of the property, real and personal, was taken and $1,701.76 of the purchase price was allowed as a credit to the plaintiff on his one-third interest, the balance to draw nine per cent interest and be paid out of plaintiff's one-third of the net profits, and that he was then and there let into possession as a partner and as the active manager in charge of the actual ranch operations at a salary of $100 per month as partial compensation for his services. Since this evidence stands undisputed, no useful purpose would be served in summarizing it here.

Our attention is called, however, to the wording of the findings to the effect that the partnership was formed for the purpose of ranching and raising livestock *and dealing and trading in real and personal property*. While it is true that in the conduct of the business both real and personal property was bought and sold on different occasions, the record does not disclose any intention in the minds of the parties at the time the agreement was made to engage in the business of dealing and trading in real and personal property, and the finding to that effect should be disregarded.

Next let us consider whether the conversation of January, [2] 1908, the subsequent formation of the corporation, and the giving of the note, constituted a new agreement. The undisputed testimony shows that defendant came to the ranch about that time and stated that after thinking it over he believed the best way to handle the partnership was to form a company; that it was agreed that if one was formed it was to be just a matter of form; that it was to work no change in their partnership affairs; that no one was to have or own any interest in the company except plaintiff and defendant; that

it would not be necessary for plaintiff to go to Helena to help in forming it; that defendant would use the names of his wife and his niece's husband, F. K. Turner; that they would help him make out the papers, but that neither would own or have any interest in the company.

The record further shows: That thereafter on February 17, 1908, defendant organized or assumed to organize the South Pondera Ranch Company with a capital stock of $72,000, consisting of 7,200 shares of a par value of $10 each. He used the names of his wife, Mary B. Prescott, and F. K. Turner, another relative, as the other two incorporators, and as holding one share each. In exchange for 7,197 shares of stock, defendant transferred to the corporation all of the assets of the partnership mentioned in the inventory previously taken, including the 1,560 acres of land. In this transaction the value of the property conveyed was placed at $72,278.23, the amount of the inventory, of which $72,000 was represented by 7,197 shares of stock issued to defendant, and the balance of $278.23 was to be credited to the defendant. Plaintiff was not present, and his name was not used either as a stockholder or director. That thereafter, and in the month of February, 1908, defendant wired plaintiff to meet him in Conrad; that he there told plaintiff he had everything fixed up and gave plaintiff a copy of the minutes of the first corporation meeting, and presented a note for $23,040 payable in two years at nine per cent which he asked plaintiff to sign. Plaintiff objected that the note did not express their agreement, whereupon defendant stated that they had to make the note out for something; that plaintiff did not have to pay it in two years; that at the end of two years a new note could be made out and they would let it run on. Plaintiff testified, and defendant has not denied it, that this note was given as representing his purchase on October 1, 1907, of his one-third interest in the ranch and equipment, and that the understanding was that it was in no way to change their agreement theretofore made as to the time and method of payment for his one-third

interest; that it was to be paid out of plaintiff's one-third of the net profits of the partnership. The sum of $23,040 on the face of the note was arrived at by computing the interest at nine per cent on $24,000, plaintiff's one-third of the inventory price, from October 1, 1907, when the inventory was taken, to February 20, the date of the note and adding it to $24,000, and then deducting $1,701.76, the amount previously allowed plaintiff as a credit when the partnership agreement was made on October 1, 1907. On receiving this note defendant indorsed 2,400 shares of stock of the corporation to plaintiff and placed the stock certificate and note in the American National Bank in Helena, with instruction to deliver the stock to plaintiff when the note was paid. The record, so far as we are able to find, does not show that plaintiff directly consented to or had anything to do with the placing of this note and stock certificate in escrow. They remained in escrow until October 19, 1917, when they were removed from the bank by defendant. N. J. Gould, cashier of the bank, testified that if the balance shown to be due on the note had been tendered at any time prior to October 19, 1917, when they were taken by defendant, the stock and note would have been delivered to plaintiff.

From February, 1908, until March 19, 1918, the date of the dissolution, all the business of the firm was transacted in the name of the South Pondera Ranch Company. So far as this record shows, no one, however, except plaintiff and defendant ever invested or had as much as a dollar of financial interest in the corporation. Defendant admits that not a dime was received for the two shares of stock issued to his wife, Mary B. Prescott, and F. K. Turner, the two persons whose names were used in its organization. So far as appears here, neither of them now claims or ever has claimed any interest in the corporation whatsoever. Except as above stated, plaintiff was not a stockholder, and had no part in its organization, was never an officer, and never received a notice of or attended any meeting of its stockholders or directors. No such meeting

was ever held except the organization meeting and one about six weeks later, when defendant received a reconveyance of some land. Although net profits to the extent of many thousands of dollars were earned, no dividends were declared, but rather they were divided between plaintiff and defendant in the proportion of one-third and two-thirds, respectively, and plaintiff's one-third was indorsed by defendant on plaintiff's note. The corporation never had a bank account, and during this entire period of more than ten years all of its funds were deposited to defendant's individual account in the American National Bank, and mingled with his individual funds. The only record of the financial transactions of the corporation was that kept by the defendant in a private individual cash-book, each page of which was headed by his own name written in his own handwriting. While this book was in nowise a complete record, yet in it the defendant made entries crediting plaintiff with one-third of the net profits. Defendant's attitude and demeanor toward plaintiff in their business relations throughout this long period and up until the rupture were those of a partner. He frequently alluded to plaintiff as his partner in conversations with third persons, and there is nothing except the paper record in this case to indicate that defendant ever contemplated or intended that any other relations should exist.

The record shows that defendant furnished plaintiff with printed checks on defendant as treasurer of the South Pondera Ranch Company, a corporation. These checks were signed by plaintiff as manager in payment of the obligations of the business, defendant having an arrangement with the American National Bank to recognize them as checks and pay them out of his personal account. Plaintiff made contracts with and bought and sold land for the corporation and in the corporate name.

All of the testimony relative to the agreement and understanding of the parties in giving the note, the agreement to [3] continue the business as a partnership in fact, but in

name a corporation, and its actual operation as such partner-
ship, was received over defendant's objection. He insists that
the note and its deposit in escrow by defendant constituted a
new agreement which entirely superseded the agreement of
October 1, 1907, if any was actually reached at that time, and
that proof by parol varying its terms has been erroneously
admitted. This contention cannot be sustained.

Plaintiff is not attempting to avoid payment of the debt
for which the note was given. He is merely seeking to show
the particular engagement or obligation which induced its
execution, plaintff claiming it was for his one-third interest
in the partnership formed on October 1, 1907, and defendant
claiming it was given in purchase of stock in the corporation.
This he is clearly entitled to do. The evidence was competent
and relevant to the issues involved, and on being received
shows conclusively that there never was any intention to sup-
plant or abandon the original partnership formed on October
1, 1907. (4 Page on Contracts, secs. 2176–2179.)

In *Clark* v. *Ducheneau,* 26 Utah, 97, 72 Pac. 331, the issue
presented was whether the note sued upon was executed and
delivered for money borrowed or as security for the perform-
ance of an oral agreement for the purchase of stock. The
court said: "Under such an issue it was competent to offer
and admit evidence to show what the purpose of the parties
was in executing, delivering, and receiving the note."

In *Peugh* v. *Davis,* 96 U. S. 332, 24 L. Ed. 775 [see, also,
Rose's U. S. Notes], the court said: "The rule which excludes
parol testimony to contradict or vary a written instrument has
reference to the language used by the parties. That cannot
be qualified or varied from its natural import, but must speak
for itself. The rule does not forbid an inquiry into the object
of the parties in executing and receiving the instrument."

In *Bartholomew* v. *Fell,* 92 Kan. 64, 139 Pac. 1016, the court
said: "The general rule is that parol evidence is admissible
to establish a fact collateral to a written instrument which
would control its effect and operation as a binding agreement."

In *McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206, 194 Pac. 213, it was sought to hold defendant on certain alleged contracts for the purchase of grain. The court, speaking through Mr. Justice Holloway, said: "May the defendant by parol evidence establish the fact that each of the exhibits was signed by him, and delivered to Bailey, for a purpose other than the purpose for which it is now being used—as the basis of an action? The evidence was competent and material and its production did not infringe the parol evidence rule. Defendant did not seek to vary, contradict or even explain the terms of the exhibits. He sought only to show that he signed and delivered them to Bailey to be held by him as memoranda of the grain purchased by defendant for plaintiff's account to complete the records and files of the Helena office, and not as evidence that defendant had bound himself personally to deliver the grain."

Counsel next insists that the court erred in finding that the corporation was a sham device adopted by the defendant for the purpose of cheating and defrauding plaintiff, and that it was a mere fiction. We cannot find from the record, taken as a whole, that plaintiff was cheated or defrauded by the use of, or through the instrumentality of, the corporation as such. The record seems rather to show that plaintiff and defendant adopted the South Pondera Ranch Company, as a name under which they conducted their partnership business with the mutual understanding that its use should in no way alter or change their original partnership agreement, and the finding that it was owned solely by the defendant and was adopted by him with the intent of taking advantage of plaintiff and to cheat, wrong and defraud him should be disregarded.

Next let us inquire as to whether the South Pondera Company ever came into existence or functioned as a legal entity, [4–6] and what was its status in the transactions between plaintiff and defendant. In this connection counsel for defendant calls attention to the fact that plaintiff as an individual contracted with the corporation as such and conveyed

property to it, and insists that, having purported to act as its manager for more than ten years and in other ways recognized it, he is estopped to deny its existence.

No principle of estoppel can apply as between plaintiff and defendant in this action, for the reason that defendant has not shown or attempted to show that he would suffer any injury whatsoever by holding the corporation to be a mere fiction with no legal existence. He has neither pleaded nor proven an estoppel, both of which are necessary if it is to be relied upon in this state. There is, however, this exception to the general rule—that, where there has been no opportunity to allege estoppel, it may be given in evidence with the same effect as if alleged. (Bigelow on Estoppel, 762; *Josephi* v. *Mady Clothing Co.,* 13 Mont. 195, 33 Pac. 1; *Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *Eisenhauer* v. *Quinn,* 36 Mont. 368, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac. 38; *Rausch* v. *Rausch,* 14 Mont. 325, 36 Pac. 312; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315.)

In *Rausch* v. *Rausch, supra,* it is said: "There is no principle of estoppel to bar defendant, under the conditions shown in this case, from asserting her right to said property. If so, then she is estopped by having suffered wrongs and imposition through the misconduct of others in matters wherein she was innocent and deceived; and the law of estoppel, so operating, would augment her injury. Such is not the office of estoppel. It is interposed against guilty conduct to prevent imposition, deception, and injury to others acting in good faith in reference to the same subject. Nor does it appear that any disadvantage resulted to plaintiff from the events recited."

In this inquiry let us keep in mind that the corporation itself is not a party to this action; that the rights of no third persons who have dealt with the corporation as such are involved; that plaintiff and defendant are the only persons who have ever had, or who could claim any financial interest in it whatsoever.

In 1 Morawetz on Private Corporations, section 1, the author says: "A legally constituted corporation is ordinarily treated at law, as well as in the transaction of ordinary business, as a distinct entity or person, without regard to its membership. In most cases this is a just as well as a convenient means of working out the rights of the real persons interested; however, it is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly, that the existence of a corporation independently of its shareholders is a fiction; and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being."

Again in section 227 of the same work, after reciting that in courts of equity as well as law a corporation is regarded and treated as an entity or collective body, it is said: "But there is this difference. In equity the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest; while at law this figurative conception takes the shape of a dogma, and is often applied rigorously, without regard to its true purpose and meaning. In equity the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice; at law this relationship is not recognized at all."

In *Seymour* v. *Spring F. C. Assn.,* 144 N. Y. 333, 26 L. R. A. 859, 39 N. E. 365, it was said: "The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth."

The following are cases in which the courts have ignored the corporate entity in order to arrive at a just conclusion where the circumstances seemed to require it: *Chicago Union Traction Co.* v. *City of Chicago,* 199 Ill. 579, 65 N. E. 470; *Day* v. *Postal Tel. Co.,* 66 Md. 354, 7 Atl. 608; *Andres* v. *Margon,* 62 Ohio St. 236, 78 Am. St. Rep. 712, 56 N. E. 875; *Cincinnati V. Co.* v. *Hoffmeister,* 62 Ohio St. 189, 78 Am. St. Rep. 707, 48 L. R. A. 732, 56 N. E. 1033.

*Barnes* v. *Smith,* 48 Mont. 309, 137 Pac. 541, was a case in which plaintiff had become the only *bona fide* stockholder of a corporation, but continued its business through the agency of dummies selected to act according to his directions. A debt contracted in the name of the company by the dummies for the payment of which they had become sureties during the course of business was held to be in legal effect the debt of the owner of the stock, so that he could not hold his dummies for the amount of it, though he had paid it. In that case Mr. Chief Justice Brantly, speaking for the court, after first discussing the various situations in which the corporate entity cannot be questioned or inquired into, said: ''Even so, there are exceptional cases in which the courts refuse to recognize the corporate entity, as distinguished from the stockholders, if the refusal of such recognition is necessary in order to get at the truth. This statement applies especially to cases in which the corporation is used as a cloak for fraud, or to enable the owner of the stock to evade personal liability or the performance of a public duty. It has application, also, to cases in which circuity of action would otherwise be necessary to reach an adjustment of the rights of the parties.'' And later in the same opinion: ''Under section 3833 of the Revised Codes, the powers of a corporation must be exercised by a board of not less than three nor more than thirteen directors, to be elected from among the stockholders, or, where there is no capital stock, then from the members of the corporation. 'Directors of corporations for profit must be holders of stock therein in an amount to be fixed by the by-laws,' *etc.* (Sec. 3833.) Manifestly, the legislature, in making this requirement, intended that the directors should be *bona fide* owners of stock; otherwise, the aggregate body would be such only in name, and it would be possible for a single person, through his own employees and agents acting as his 'dummies,' to conduct his individual business under the guise of a corporation, with all the attendant privileges and immunities, and thus escape personal liability altogether. The legislature did not intend this

situation to be possible. The result of the requirement is that, when the capital stock passes into the hands of a single person, the entity of the corporation, except so far as it is necessary to protect the rights of strangers, who deal with it through its ostensible officers and agents, is entirely in abeyance, and its functions for the time being cease. So it is held by the current of authority. (*First Nat. Bank of Gadsden* v. *Winchester,* 119 Ala. 168, 72 Am. St. Rep. 904, 24 South. 351; *Louisville Banking Co.* v. *Eisenman,* 94 Ky. 83, 42 Am. St. Rep. 335, 19 L. R. A. 684, 21 S. W. 531, 1049; *Louisville Gas Co.* v. *Kaufman, Strauss & Co.,* 105 Ky. 131, 48 S. W. 434; Thompson on Corporations, sec. 6498.)''

In *Hanson Sheep Co.* v. *Farmers' etc. State Bank,* 53 Mont. 324, 163 Pac. 1151, plaintiff, claiming to be a corporation, had on deposit certain funds with the defendant bank which were applied by defendant in the discharge of an overdue note of one Albert S. Hanson, the president of plaintiff company, on an alleged oral authorization by Hanson, and suit was instituted in the name of the sheep company for recovery of the amount so applied. It appeared from the record that the corporation was originally organized by Hanson, his wife, and one Trogdon, his hired man, who acted as its directors; Mrs. Hanson became the owner of one share of stock, par value $100, for which she paid $1; Trogdon purchased one-third of the shares, giving his note to Hanson for an unpaid balance of the purchase price, who held the certificates as collateral for security. Five years later Trogdon's shares were forfeited on account of his failure to pay the balance of the purchase price. Two years after the forfeiture of Trogdon's shares a brother of Hanson residing in Oregon acquired some shares; there being no showing that he ever paid anything for them or was ever present in Montana or took any part in the business of the corporation. No meeting of the stockholders or directors was ever had subsequent to the preliminary organization. In affirming a judgment for defendant bank, Mr. Chief Justice Brantly, again speaking for the court, said: ''Counsel

for the defendant insist, however, that the plaintiff is a mere colorable corporation—a shadow—organized and maintained by Hanson as a cloak or *alias* under which to conduct his own business. They earnestly contend that the indebtedness was that of Hanson, and that he had the right to devote the deposit to the payment of it, whether evidenced by his own note or that of the ostensible corporation; in other words, Hanson, having used the corporate name merely as a means to serve his personal convenience, cannot insist that he and plaintiff are distinct persons, that he bears toward it a fiduciary relation, and that he could not lawfully apply its assets to discharge his personal debt. This contention, we think, must be sustained. Whatever view may be taken of the *bona fides* of the organization in the beginning, when Trogdon transferred his shares to Hanson the entity of the corporation fell into a condition of abeyance. It had no board of directors nor any secretary. Therefore it had no agency through which it could legally act. The business theretofore conducted in its name by Hanson was thereafter treated by him as his personal business, or at least that of himself and his wife as copartners. The result was that the name of the corporation, except for the purpose of protecting strangers, became in effect the name of Hanson, and the business, so far as he conducted it in the corporate name, was his. When a corporation is in this condition, the public cannot be expected to know of the fact; hence the rule that, where strangers deal with it, it can be held for all obligations assumed by its officers in its name. Its legal capacity cannot be inquired into collaterally or questioned by a private citizen in a controversy between it and him. This can be done only by the state through its proper officer (Rev. Codes, sec. 3892), and for one of the causes prescribed by the statute (section 6944). But this rule does not preclude an examination into the facts to ascertain the identity of the person who uses the name of the corporation for his own purposes to fix liability for the ostensible corporate acts upon him.''

In the case at bar there is no pretense that either defendant's wife or F. K. Turner, two of its three directors and officers, ever had any interest whatsoever in the corporation other than to lend the use of their names as a matter of form. They were mere dummy or pretended officers and stockholders. There is no contention that anyone except defendant and plaintiff has ever had any financial interest in its affairs, and plaintiff has never received a legal transfer of any of the stock. He was never qualified and never assumed to act as a director or officer. Only two meetings were ever held and he did not attend either of them. No dividends were declared. Instead, all the profits were divided between plaintiff and defendant as partners in the proportion of one-third and two-thirds. It requires at least three persons financially interested as *bona fide* stockholders to organize and carry on a legal corporation in this state. Hence, the South Pondera Ranch Company never came into existence or functioned as a legal entity. Its only function was to serve as a pseudonym under which the partnership business of plaintiff and defendant was conducted as such.

Defendant's transfer to the South Pondera Ranch Company of the real and personal property mentioned in the inventory was a transfer to a fictitious entity, in the name of which the partnership business was conducted and for which plaintiff gave his note in the sum of $23,040, as representing the balance of his obligation for a one-third interest therein.

In our opinion plaintiff's demand for delivery of the certificate of stock amounted to no more than an effort to obtain possession of the paper evidence of his one-third interest in the partnership property.

The transaction is therefore entirely removed from the operation of the statute of frauds, and defendant's contention that the agreement is void on that ground is without merit.

The trial court finds that, through defendant's fault, no accounting of the partnership affairs was had from the time [7] of its inception in 1907 until early in 1913. At that time it

was found that the partnership had earned net profits amounting to $37,745.68. Defendant then credited plaintiff's note with his one-third of this amount, to wit, $12,581.89; and also with the sum of $3,796.60 unpaid wages. Thereafter, through defendant's failure or refusal to do so, no further accounting was had and no further indorsements were made on plaintiff's note. The profits of the partnership were allowed to accumulate principally in the form of assets consisting of real and personal property.

In paying federal income taxes defendant reported that the corporation had a net income of $14,201.07 for the year 1914, $12,656.31 for the year 1915, and $46,110.30 for the year 1916. The trial court, in arriving at the net amount due from defendant to plaintiff allowed plaintiff a credit on his note of one-third of these various amounts as of January 1, 1915, 1916, and 1917, respectively, and thereby found that the note was more than paid on January 1, 1917. The court then charged back and deducted these various sums from what was found to be the value of plaintiff's one-third of the personal property on March 19, 1918. We think this is not the correct method. It cannot be said that the net income reported to the federal government for purposes of taxation was such as could be applied in satisfaction of the note, since only a portion of the net income so reported was actual cash, a large proportion of it consisting of increases in value or accumulations of property. Allowing only the credits made on the note in 1913, plaintiff should be charged with interest at nine per cent on the balance of the note to March 19, 1918, in arriving at the amount due plaintiff in the accounting.

Plaintiff admitted that this was the correct method of ascertaining the balance due on the note when a few days after being ousted he offered to pay defendant $25,170 in full satisfaction of the same and the records show that only the indorsements made in 1913 were considered by plaintiff in arriving at the sum of $25,170 as the unpaid balance. This will make

a difference in defendant's favor of $3,642.26, and the judgment should be reduced by that amount.

The findings of the trial court wherever inconsistent with this opinion are hereby amended to conform therewith.   After reducing the judgment by the sum of $3,642.26, as of the date of its entry, the judgment and decree of the court below are affirmed.   The appellant is entitled to recover seven per cent of his costs on this appeal.

*Modified and affirmed.*

Associate Justices Cooper, Holloway, Galen and Stark concur.